**Richard PARVIN, Appellant,**

v.

**John Thomas DEAN and Dori Anna Dean, Individually and as Legal Representatives of The Estate of Cheri Annette Dean, Appellees.**

**No. 2–99–135–CV.**

Court of Appeals of Texas,
Fort Worth.

Nov. 18, 1999.

---

**2.** The procedures in Chapter 155 apply to this motion to transfer. Tex. Fam.Code Ann. § 103.002(c) (Vernon 1996).

266

Sanford & Walls, Robert T. Walls, Dallas, for Appellant.

Law Office of Sue Walker and Sue Walker, Barkholtz, Boehme & Borchardt, L.L.P. and Geno E. Borchardt, Fort Worth, for Appellee.

**OPINION**

DIXON W. HOLMAN, Justice.

This appeal is from a summary judgment with which the trial court has upheld Appellees' contentions that, upon the facts of this case, (1) the wrongful death and survival statutes, as construed by the courts of this state, are unconstitutional and (2) the established case law of Texas inflicts upon Appellee John Thomas Dean gender discrimination that violates the equal protections provisions of the federal and state constitutions. The parties have stipulated all of the material facts and on appeal present only issues that call into question the constitutionality of the wrongful death and survival action statutes as applied to the facts of this case, *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.001(2), 71.002(a), 71.003(a), 71.021 (Vernon 1997), and the application of constitutional protections against gender discrimination.

We conclude that, on the facts of this case, the Texas wrongful death and survival action statutes unconstitutionally deny redress and equal protection to a mother and father of a viable[1] fetus capable of living outside the womb, when viability is wrongly terminated by another's negligent conduct. Further, we hold that entitling the mother to damages for the mental anguish caused by the experience of losing a viable fetus to another's negligence while at the same time denying the father an equal right to damages for his mental anguish caused by the same event is uncon-

1. " '*Viable*' means the stage of fetal development when, in the medical judgment of the attending physician based on the particular facts of the case, an unborn child possesses the capacity to live outside its mother's womb after its premature birth resulting from any cause." TEX.REV.CIV. STAT. ANN. art. 4495b, § 4.011(a)(3) (Vernon Supp.1999) (emphasis added).

stitutional gender discrimination on the facts of this case. For these reasons, we affirm the trial court's summary judgment.

## BACKGROUND

In this case, two cars collided at a street intersection. One driver, Appellant Richard Parvin, failed to heed a stop sign. The driver of the other car was Appellee Dori Anna Dean, then 36 weeks (9 months) pregnant with Cheri Annette Dean. Dori's husband then and now is Appellee John Thomas Dean, Cheri's father. Parvin has stipulated that he was negligent, that his negligence proximately caused the collision, and that Dori was not negligent. Parvin and Appellees[2] have stipulated that immediately after the collision, Dori felt Cheri kicking in the womb, her water did not break, and she had no vaginal bleeding, but that as a precaution, an ambulance took Dori from the collision site to the hospital, where Dori and John learned that Cheri was dead in the womb. The next day, with John at her bedside, Dori had to suffer more than nine hours of labor, during which Cheri was delivered vaginally. Cheri was stillborn.

The parties have stipulated that the summary judgment evidence before the trial court included the expert medical testimony of Dr. Douglas Decker, Dori and Cheri's treating physician,[3] who is board certified in obstetrics and gynecology. His medical testimony is uncontroverted.[4] Dr. Decker testified upon a reasonable medical probability that at the time she was stillborn, Cheri was at 36 weeks' gestation, weighed 7 pounds and 3 ounces, and was 21 inches long. Moreover, Dr. Decker testified that upon a reasonable medical probability Cheri was *fully developed, viable, and could live outside the womb immediately before the collision,* she had the capacity to *cry* at the time of the collision, and although Cheri was dead before she arrived at the hospital, she was *alive* at the time of the collision and had *lived* for some period of time after the collision. Dr. Decker testified that but for the collision, Cheri would be alive and healthy. Without objection, Cheri's photograph, taken after she was delivered, was included in the record.

2. We refer to John and Dori in their individual capacities and as legal representatives of Cheri's estate as "Appellees."

3. *See Brown v. Shwarts,* 968 S.W.2d 331, 334 (Tex.1998) (holding that, although in the womb, a fetus is a physician's *patient* ); *see also* TEX. HEALTH & SAFETY CODE ANN. § 313.002(8) (Vernon Supp.1999) (defining "patient" as a *person* who is admitted to a hospital).

4. Dr. Decker's uncontroverted testimony offers a stark contrast between the medical science of long ago and the current technology that lets today's parents use ultrasound to see their child in the womb and that enables physicians to diagnose and surgically or medicinally treat ill or injured fetuses in the womb. More than six decades ago, Texas courts of the 1930's found a rationale for denying justice to Texas parents who otherwise have a meritorious reason to seek redress in a court of law for the wrongful death of their unborn child:

Good reason is found for denial of the right of recovery in the fact that in many cases it would be impossible to establish except by speculation or conjecture that the death or condition of the child was proximately caused by the injury. But, far worse than the indulgence of such speculation and conjecture and the *insurmountable* difficulty of satisfactorily *proving viability,* there would follow in the wake of this character of litigation many fictitious claims, with false testimony in their support, which the defendant would always find difficult and often impossible to refute. These considerations, we think, *outweigh the denial of justice* in the abstract *to the meritorious case. Magnolia Coca Cola Bottling Co. v. Jordan,* 124 Tex. 347, 78 S.W.2d 944, 950 (1935) (emphasis added), *overruled by Leal v. C.C. Pitts Sand & Gravel, Inc.,* 419 S.W.2d 820 (Tex.1967). Even if more than 60 years ago that was an acceptable excuse for denying justice despite a meritorious case, medical advancements in the intervening years have demonstrated that proving viability is no longer an "insurmountable difficulty." And here, the proximate cause is not conjecture or speculation. Instead, causation is established, uncontroverted, and stipulated to.

Parvin paid Dori $50,000 in exchange for Dori's agreed settlement of all claims she had brought against him in her individual capacity, one of which was her individual claim for mental anguish from the loss of her fetus. The three remaining claims against Parvin were left for the trial court to resolve by ruling on the opposing motions for summary judgment:

1. Dori and John's claim for Cheri's wrongful death;

2. Dori and John's survival claim related to Cheri's wrongful death;

3. John's claim for the mental anguish he suffered because of Cheri's wrongful death.

## SUMMARY JUDGMENT

We quote constitutional issues presented in Appellees' motion for summary judgment:

[T]o the extent Texas Wrongful Death Act and Survival Statute exclude[ ] viable stillborn babies within its definition[s] of who is an individual, this is arbitrary, unreasonable, and in violation of [Appellees'] rights to due process of law and for equal protection of the laws under the Fifth and/or Fourteenth amendments to the United States Constitution, and Article I, Sections 3 and 19 of the Texas constitution because:

(1) The exclusion of viable fetuses insidiously discriminates [in favor of] viable fetuses who could sustain life if delivered through immediate surgical intervention [and against] viable fetuses who are denied the opportunity to sustain life by being delivered through immediate surgical intervention;

(2) The exclusion insidiously discriminates between viable fetuses and other members of society who are included in the definition of an individual;

(3) The exclusion fails to provide a reasonable substitute for [redress by] parents who are victims of negligence when their viable fetus has been denied [the] opportunity to sustain life outside the womb;

(4) The exclusion does not have a rational basis;

(5) The exclusion of viable fetuses from the [scope of the statutes] constitutes insidious discrimination [against] (1) unborn children possessing capability to live outside their mother's womb whose live births are prevented by acts of negligence and [in favor of] (2) unborn children possessing the capacity to live outside their mother's womb whose live births are prevented by an intentional act. In this regard [Appellees] would show that Article 4495b, Section 4.011, Texas Revised Civil Statute, prohibits a physician practicing medicine in the State of Texas from *intentionally* performing an abortion on a woman who is pregnant with a viable unborn child during the third trimester of pregnancy. "Viable" is defined as the stage of fetal development ... when, in the medical judgment of the attending physician, an unborn child possesses the capacity to live outside its mother's womb after its premature birth resulting from

any cause. The State of Texas cannot constitutionally recognize the viability of fetuses in its statutes which prohibit physicians from intentionally doing any act to interfere with the live births of a viable fetus while denying the viability of fetuses in statutes which grant causes of action to wrongful death beneficiaries.

(6) The exclusion insidiously discriminates [against] parents of viable fetuses who could sustain life outside the womb but who because of negligence are prevented [from] being born alive and [in favor of] parents of other children whose lives are not preempted prior to birth.

*See* U.S. CONST. amends. V, XIV; TEX. CONST. art. I, §§ 3, 19. Appellees' motion also asserts that rejecting the father's mental anguish claim on the stipulated facts while granting the mother's mental anguish claim on the same facts would constitute gender discrimination that violates the Equal Rights Amendment to the Texas Constitution, Article I, Section 3a.

The court eventually signed a summary judgment that does not state specific grounds but grants Appellees a judgment for $50,000 against Parvin. Because of the parties' stipulations, if Parvin's appeal from the summary judgment is unsuccessful and we affirm Appellees' right to recover against Parvin on any of their theories (either wrongful death, survival, or for John's mental anguish), then Parvin's maximum additional liability will be $50,000.

## THE APPEAL

Appellant also filed a summary judgment motion, which the trial court denied, but Appellant does not appeal that denial. He only appeals the court's granting of Appellees' motion. Appellant insists that the trial court's conclusions about the issues of law presented in Appellees' motion were wrong. Relying on the stipulated facts, Appellant asks us to resolve three

issues of law on appeal: whether Cheri's death entitles Appellees to a wrongful death cause of action, whether Cheri's death entitles Appellees to a survival claim, and whether Cheri's death entitles John, as her father, to recover for his mental anguish. Inherent in all three of the issues are the constitutional challenges on which Appellees grounded the summary judgment motion that the trial court granted.

Because the appeal evolves from a case in which the stipulated and uncontroverted evidence establishes that Appellant's negligence in a car crash proximately caused a pregnant mother's viable fetus to be stillborn, we must recognize that the Texas Supreme Court has interpreted the wrongful death and survivor statutes to mean that parents in this state cannot recover for the wrongful death of their unborn child, *see Shwarts*, 968 S.W.2d at 335 (Gonzalez, J., dissenting), and also to mean that until and unless the legislature amends those statutes, there is no wrongful death and survival cause of action for the death of a viable fetus that is stillborn. *See Krishnan v. Sepulveda*, 916 S.W.2d 478, 481 (Tex.1995); *Blackman v. Langford*, 795 S.W.2d 742, 743 (Tex.1990) (citing *Witty v. American Gen. Capital Distrib.*, 727 S.W.2d 503, 506 (Tex.1987); *Tarrant County Hosp. Dist. v. Lobdell*, 726 S.W.2d 23, 23 (Tex.1987)).

Unlike those cases, however, the present appeal focuses upon the issue of whether, on the facts of this case, the Texas wrongful death and survival action statutes unconstitutionally discriminate against and deny equal protection of law to the mother and father of a viable fetus capable of living outside the womb, when viability is wrongly terminated by another's negligent conduct,[5] *see* U.S. CONST. amends. V, XIV; TEX. CONST. art. I, §§ 3, 19, and whether, on the facts of this case, the courts should refuse to allow unconstitutional gender discrimination. *See* TEX. CONST. art. I, § 3a.

## STANDARDS OF REVIEW

### A. Summary Judgment

■ Because the material facts of this case have been stipulated by the parties and because Parvin is appealing from a summary judgment that does not recite the grounds on which it was granted, he has the burden of establishing for this court that none of the theories asserted in Appellees' summary judgment motion are meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Consequently, we must affirm if any of the motion's grounds are meritorious. *See id.*

### B. The Equal Protection Challenge

■ The equal protection clauses of the Fourteenth Amendment and the Texas Constitution guarantee that no person shall be denied the equal protection of the laws. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 3.[6] The concept of

---

5. The legislature has defined a "patient" as "a *person* who is admitted to a hospital." TEX. HEALTH & SAFETY CODE ANN. § 313.002(8) (emphasis added). The Texas Supreme Court has held an unborn baby is *not* a "person." *See Witty*, 727 S.W.2d at 504. On the other hand, the supreme court also has held that while in the womb, an unborn baby *is* a physician's *patient*, for whom *there is a cause of action that accrues before birth*, for *injuries* negligently inflicted on the baby in the womb—so that after the baby is born alive, the infant may have redress for its pre-birth, *injurious* experience in the womb. *See Shwarts*, 968 S.W.2d at 334. In contrast, when a viable baby is *deprived of life* by another's negligent conduct, the wrongful death and survival statutes have been construed to accord no redress for the surviving parents of the unborn baby whose viability, the capacity to live outside the womb, was terminated by another's negligent conduct. *See Krishnan*, 916 S.W.2d at 481. The obvious and uneven result is that the wrongful death and survival statutes make it more profitable for a tortfeasor to kill an unborn baby than to injure an unborn baby.

6. The Texas equal protection clause provides that "[a]ll free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." TEX. CONST. art. I, § 3.

equal protection originates from the American ideal of fairness and operates to provide a safeguard against invidious discrimination. *See Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). The guarantee of equal protection is designed to level the playing field by protecting every person within a sovereign's jurisdiction against intentional or arbitrary discrimination, whether such discrimination is occasioned through the express terms of a statute or by its improper execution. *See Glicker v. Michigan Liquor Control Comm'n,* 160 F.2d 96, 99 (6th Cir.1947) (quoting *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352, 38 S.Ct. 495, 495, 62 L.Ed. 1154 (1918)).

When analyzing an equal protection claim, the same requirements are applied under the Texas Constitution as under the United States Constitution. *See Reid v. Rolling Fork Pub. Util. Dist.,* 979 F.2d 1084, 1089 (5th Cir.1992). Different levels of judicial scrutiny may apply when analyzing equal protection questions, and the level of scrutiny we should use depends on the specific individual right the state has affected through its legislative classification that is being challenged. Even the loftiest goal will not justify unconstitutional discrimination. *See, e.g., In re McLean,* 725 S.W.2d 696, 698 (Tex. 1987). Consequently, our first determination when considering the argument that a party has been denied equal protection of the laws is to ascertain the appropriate standard of review.[7] *See Spring Branch*

*I.S.D. v. Stamos,* 695 S.W.2d 556, 559 (Tex. 1985), *appeal dismissed,* 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986).

In deciding on the appropriate level of review, we must consider all the facts and circumstances of the law, the interests that the state's statutory classification claims to be protecting, and the interests of those who claim to be disadvantaged by its application. *See Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). As a general rule, state laws are construed with a presumption of validity against equal protection challenges. *See Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979); *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983); *Castillo v. Hidalgo County Water Dist. No. 1,* 771 S.W.2d 633, 635 (Tex.App.—Corpus Christi 1989, no writ). Under the equal protection clause of the Texas Constitution, if the challenged classification neither infringes upon a fundamental right or interest nor burdens an inherently suspect class, the classification must be rationally related to a legitimate state interest.[8] *See G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 408, 102 S.Ct. 1137, 1141, 71 L.Ed.2d 250 (1982); *Spring Branch I.S.D.,* 695 S.W.2d at 559; *Sullivan v. University Interscholastic League,* 616 S.W.2d 170, 172 (Tex. 1981). Although Appellees contend that parents of a viable fetus, who incurred prenatal injuries and is subsequently stillborn, are a suspect or quasi-suspect class for equal protection purposes, we are not persuaded.[9] Therefore, we defer to the

---

7. For equal protection purposes, courts typically refer to plaintiffs as members belonging to one of three different classes: (1) suspect classes; (2) quasi-suspect classes; and (3) non-suspect classes. Membership in a particular class dictates our appropriate standard of review.

8. Under the rational basis test, similarly situated individuals must be treated equally by the State's classification unless there is a rational basis for not doing so. *See Whitworth v. Bynum,* 699 S.W.2d 194, 197 (Tex.1985).

9. Suspect classes have traditionally consisted of classifications based on race, ethnicity, and alienage. *See Loving v. Virginia,* 388 U.S. 1, 2, 87 S.Ct. 1817, 1818–19, 18 L.Ed.2d 1010 (1967) (invalidating state laws prohibiting interracial marriages); *Korematsu v. United States,* 323 U.S. 214, 224, 65 S.Ct. 193, 197, 89 L.Ed. 194 (1944) (upholding federal law sequestering Japanese immigrants upon showing of a compelling governmental interest of national security). Whereas quasi-suspect classes are comprised of classification based on gender and illegitimacy. *See Kirchberg v. Feenstra,* 450 U.S. 455, 461, 101 S.Ct.

general standard of review (the rational basis test) to guide us in our analysis of Appellees' equal protection claim.

As in all equal protection challenges, we must identify the statute's purpose to discern whether the types of persons included or excluded by the state's classification make it a rational classification. The Texas Legislature first enacted a Wrongful Death Act in 1860. *See* Act approved Feb. 2, 1860, 8 th Leg., R.S., ch. 35, § 1, 1860 Tex. Gen. Laws 32, 32, *reprinted in* 4 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897, at 1394, 1394 (Austin, Gammel Book Co. 1898). The Act now imposes liability on anyone who causes an injury that results in an "individual's" death if the injury was caused by a wrongful act or neglect. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.002(b) (Vernon 1997). Appellees accurately argue that "[n]o language in the wrongful death statute says states or implies that 'there is no cause of action for death where there would be no cause of action for injuries.' " Appellees emphasize that the statute's plain meaning is that although the negligent injury to Cheri while still in the womb caused her death, the statute would have entitled her to sue for that injury if she had lived.

■■■■ It is apparent that the legislature's purpose was to furnish a decedent's survivors with a mechanism to recover for "intangible injuries resulting from their loss of future pecuniary benefits, care, maintenance, support, services, advice and counsel from the deceased." *Castillo,* 771 S.W.2d at 635. Because of the statute's stated purpose, the State's interest in allowing suits for wrongful death and survival damages is to provide redress to the familial relationship for injuries that are worthy of compensation. *See Sanchez v. Schindler,* 651 S.W.2d 249, 252 (Tex.1983); *Whittlesey v. Miller,* 572 S.W.2d 665, 668 (Tex.1978).

## THE CONSTITUTIONALITY OF THE WRONGFUL DEATH AND SURVIVAL STATUTES

■■■■ The right to seek redress has been extended to the parents of a viable fetus that sustains a prenatal *injury* before birth as long as the fetus is subsequently born alive.[10] *See Leal,* 419 S.W.2d at 821. In contrast, the courts of Texas have not recognized *any* cause of action for parents of a viable fetus that suffers the identical injury, but fails to live outside its mother's womb. *See Pietila v. Crites,* 851 S.W.2d 185, 187 (Tex.1993); *Blackman,* 795 S.W.2d at 743; *Witty,* 727 S.W.2d at 506. The rationale given for such a harsh distinction between sets of parents similarly situated is that the legislature meant to exclude fetal life that is prevented from living outside its mother's womb from the statutes' scope. *See Blackman,* 795 S.W.2d at 743; *Witty,* 727 S.W.2d at 506. Consequently, judicial interpretations of the meaning of the wrongful death and survival statutes have treated parents of viable fetuses that are born alive differently from parents of viable fetuses that are stillborn.

Although Parvin insists that the trial court should have rejected Appellees' contentions of unequal and therefore unconstitutional statutory treatment in the summary judgment proceedings, we find Appellees' arguments and grounds for

1195, 1199, 67 L.Ed.2d 428 (1981) (recognizing that discrimination based on gender must be related to important government objectives to be constitutional); *Levy v. Louisiana,* 391 U.S. 68, 72, 88 S.Ct. 1509, 1511, 20 L.Ed.2d 436 (1968) (employing a "heightened" standard of review to illegitimate children). Pregnancy alone is not considered a factor giving rise to suspect class treatment. *See Right to Choose v. Byrne,* 91 N.J. 287, 450 A.2d 925, 934 (1982).

**10.** The Texas Survival Statute also allows parents to bring a survival claim on behalf of a viable fetus as long as the fetus is born alive and then dies as a result of a personal injury inflicted by the negligent tortfeasor. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.021(b) (Vernon 1997); *Witty,* 727 S.W.2d at 504.

summary judgment accurate and persuasive. Parvin's second point calls into question whether the wrongful death and survival statutes unconstitutionally deny the mother and father of a viable fetus, who is capable of living outside the womb at the time a negligent tort is committed, equal protection and due process under the law by excluding the parents from the redress of a wrongful death suit or survival claim for the loss of the viable fetus.

Appellees emphasize in their brief that if Dori had delivered the viable Cheri by cesarean section the day before the collision and if Cheri had then been killed in a car collision on the way home from the hospital, the wrongful death and survival statutes would have entitled Cheri's parents to redress in court because Cheri then would have been classified as a "person" and an "individual" under the statutes. *See Leal*, 419 S.W.2d at 821. By contrast, although Cheri was fully developed, capable of living outside the womb, and capable of immediate delivery before the collision in which Parvin's negligent conduct deprived her of life, the wrongful death and survival statutes disregard her as a non-person and a non-individual because, although viable, fully capable of living outside the womb, and *alive* according to the treating physician's uncontroverted testimony, she had not yet traveled through the birth canal. Appellees argue persuasively that whatever a viable baby is immediately *before* passing through the birth canal, so the baby is immediately *after* passing through, absent the intervention of another's negligent, injurious conduct. Alone, Cheri's passage through the birth canal as a viable fetus would not alter her intrinsic viability or being.

Appellees' brief quotes *Witty*, 727 S.W.2d at 505, which held that a viable fetus has no cause of action for injury until subsequent live birth and simultaneously cites *Shwarts*, 968 S.W.2d at 334, which held that the statute of limitations for negligence that injures a viable fetus begins to run on the date of the *in utero* injury. Appellees then pose an enigma for which we have no satisfactory answer: "[H]ow can the statute of limitations commence running *in utero* [per *Shwarts* ] if a cause of action does not exist at that time [per *Witty* ]?"

We perceive no rational or compelling state interest that justifies the wrongful death and survival statutes' unequal application to born babies while at the same time excluding viable but unborn babies and the unequal application to their parents. To the contrary, the United States Supreme Court has acknowledged that once a fetus becomes viable, the state has both logical and biological justifications, i.e., a "compelling" interest, in *protecting* [11] viable fetal life expressly because viability is the point at which the unborn has the capability of meaningfully living outside the womb. *See Roe v. Wade*, 410 U.S. 113, 163, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973). Any unequal application of the law must be justified by some rational relationship to a legitimate state interest. *See, e.g., Whitworth*, 699 S.W.2d at 197. And even when a statute's purpose is legitimate, the principle of equal protection requires that the statute's classifications be related to that purpose. *See Sullivan*, 616 S.W.2d at 172. In both *Whitworth* and *Sullivan*, the Texas Supreme Court found that statutory classifications there under review created irrebuttable presumptions that the classifications violated the equal protection clause of the Texas Constitution. *Whitworth*, 699 S.W.2d at 197; *Sullivan*, 616 S.W.2d at 172.

Here, the wrongful death and survival statutes similarly create an irrebuttable presumption that violates both the Texas

---

11. The State of Texas acted to protect viable fetal life when the legislature provided in the Medical Practices Act that Texas physicians are forbidden from intentionally performing an abortion on a woman who is pregnant with a viable unborn child during the third trimester of pregnancy. *See* Tex.Rev.Civ. Stat. Ann. art. 4495b, § 4.011(b) (Vernon Supp. 1999) (the exceptions listed in section 4.011(d) are irrelevant to this footnote).

and federal constitutional guarantees of equal protection: as construed by our courts, the wrongful death and survival statutes create the irrebuttable presumption that viable, unborn babies who are killed in the womb would not have been born alive anyway—for the statutes as construed afford no opportunity for proof that the viable, unborn baby's death was proximately caused by a tortfeasor's negligence, and that but for the negligence, the viable, unborn baby would have lived. In other words, the wrongful death and survival statutes deny Appellees equal protection by classifying all unborns together, cloaked in an irrebuttable presumption that a viable, unborn baby would never have been born alive. That denial discriminates against Appellees and does not promote the statutes' avowed purpose of creating a process for familial members' redress of wrongful death or injury.

Texas law recognizes that fetuses have protectable rights in several areas including property, probate, family, tort, and even third trimester abortions. This case does not involve abortion, but we note that when her viability was negligently terminated, Cheri had virtually completed her third trimester. Significantly, fetal rights exist under both the probate and property codes. Texas allows fetuses to inherit property from a deceased parent, *see James v. James,* 164 S.W. 47, 47 (Tex.Civ. App.—San Antonio 1914, writ dism'd), and an unborn child's right to inherit has been recognized for over 200 years. *See Nelson v. Galveston, H. & S.A. Ry. Co.,* 78 Tex. 621, 14 S.W. 1021, 1021–23 (1890).[12] A fetus can be represented in a probate court by the appointment of a personal representative. *See* TEX. PROB.CODE ANN.

§ 34A (Vernon Supp.1999). A fetus can even disclaim the legal right to inherit property under a will, *see id.* § 37A, or the right to participate and share in a legal trust. *See* TEX. PROP.CODE ANN. § 112.010(c)(2) (Vernon 1995).

A fetus is recognized as a child for certain purposes in family law. Under the family code, a parent is allowed to petition the court to terminate the parent-child relationship before the child is ever born. *See* TEX. FAM.CODE ANN. § 161.102 (Vernon 1996). We know that the law does not recognize a fetus as a person for the purposes of equal protection under the Fourteenth Amendment. *See Roe,* 410 U.S. at 158, 93 S.Ct. at 729. But here, the *parents'* constitutional rights, not the fetus' rights, would be infringed by inflicting past judicial interpretations of the wrongful death and survival statutes on them.

Fetal rights are also recognized in certain areas of tort law. We have noted that in 1890, the Texas Supreme Court held that a fetus has a wrongful death action on behalf of a parent who wrongfully dies at the hands of a negligent tortfeasor. *See Nelson,* 14 S.W. at 1022–23; *see also Shwarts,* 968 S.W.2d at 334 (while still in the womb, a fetus *is* a physician's *patient,* for whom *there is a cause of action that accrues before birth,* for *injuries* negligently inflicted on the fetus in the womb— so that after the fetus is born alive, the infant may have redress for its pre-birth *injurious* experience in the womb).

Strangely, Texas law denies the mother and father of a viable human fetus capable of living outside the womb at the time of the negligent tort, the redress of a statuto-

12. The supreme court noted that even in 1798, a "non-entity," or fetus, could

be vouched in a recovery ... [or] be an executor. He may take under the statute of distributions. He may have an injunction, a guardian.... [A] child in the mother's womb is a person in *rerum natura,* and that by the rules of the civil and common law 'she [the child] was, to all intents and purposes, a child, as if born in her father's life-

time.' ... [I]t was held 'that wherever such consideration would be for his benefit, a child *en ventre sa mere* [in its mother's womb] should be considered as absolutely born.'

*Nelson,* 14 S.W. at 1021–23 (citations omitted). Even without the sophistication of modern technology, courts over 200 years ago recognized that a viable unborn child in the womb is the same as a child in the flesh.

ry wrongful death suit or survival claim for loss of the viable fetus, while at the same time Texas law classifies unborn *animals* as "goods," so humans who own pregnant animals will have redress for the negligently inflicted death of their unborn animals.[13] Even an *artificial* entity, a corporation, is recognized by the wrongful death statute as a "person." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.001(2).

On the other hand, Texas parents who are forever deprived of their child by another's negligent termination of their viable, unborn child's life are turned away by Texas law's figurative shrug of the shoulders. "The final cause of law is the welfare of society. The rule that misses its aim cannot permanently justify its existence." BENJAMIN N. CARDOZO, THE NATURE OF THE JUDICIAL PROCESS (1921), *reprinted in* RUGGERO J. ALDISERT, THE JUDICIAL PROCESS: READINGS, MATERIALS AND CASES, at 315 (1976). For the reasons we have addressed, the wrongful death and survival statutes deny Appellees equal protection of the laws. *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. I, §§ 3, 19. Accordingly, summary judgment was proper on this issue, and we overrule Parvin's first and second issues.

## THE OPEN COURTS DOCTRINE

■ In addition to their equal protection claim, Appellees' motion for summary judgment contends that adherence to past judicial interpretations of the wrongful death and survival statutes would deny them due process under the law by excluding them from the class of persons entitled to bring an action under the wrongful death and survival statutes. The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the

due course of the law of the land." TEX. CONST. art. I, § 19. Due process prohibits the sovereign from invading fundamental rights by arbitrary action. *See Atwood v. Willacy County Navigation Dist.,* 284 S.W.2d 275, 279 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.). The objective of due process is to restrain the government from arbitrary and unreasonable exercises of power and to prevent excessive governmental encroachment. *See American Land Co. v. Zeiss,* 219 U.S. 47, 47, 31 S.Ct. 200, 200, 55 L.Ed. 82 (1911); *Rumbo v. Winterrowd,* 228 S.W. 258, 265 (Tex.Civ. App.—Dallas 1921, no writ). Due process is really nothing more than "a summarized constitutional guarantee of respect for those personal immunities which are so rooted in the [American] traditions and conscience ... as to be ranked as fundamental, or are implicit in the concept of ordered liberty." *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952) (internal quotation marks omitted).

■ To support their due process argument, Appellees assert that to the extent the wrongful death and survival statutes deny them causes of action for the death of their daughter Cheri, the denial violates the open courts provision of the Texas Constitution. The open courts provision assures to every citizen that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The Texas Legislature cannot abrogate a person's right to assert a well established common law cause of action unless the basis for the legislature's action outweighs the litigants' constitutional right of redress. *See Owens Corning v. Carter,* 997 S.W.2d 560, 573 (Tex.1999) (citing

---

**13.** If Dori's vehicle had been transporting a pregnant pig and the collision proximately caused by another's negligent conduct had terminated the life of the pig's viable fetus, Texas law would have enabled Dori to have an insurable property interest in the unborn pig, for which she could sue the negligent party and recover damages, unlike in the case of her own viable human fetus. *See* TEX. BUS. & COM.CODE ANN. §§ 2.105(a), 2.501(a)(3), 9.105(a)(8) (Vernon 1994 & Supp.1999).

*Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 261 (Tex.1994)). This so-called "open courts" provision ensures that Texas citizens who bring common law causes of action will not unreasonably be denied access to the courts. *See Sax,* 648 S.W.2d at 664.

 In order to establish an open courts violation, a party must demonstrate that a well recognized, common law cause of action is being restricted by a statute and that the restriction is unreasonable when balanced against the purpose and basis of the statute. *See Owens Corning,* 997 S.W.2d at 573; *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990). In applying this test, we must give deference to the statute's general purpose and the extent to which the litigant's right to redress is affected by the statute.

The original Texas Wrongful Death Act was patterned after Lord Campbell's Act, adopted in England in 1846, before which the common law afforded no redress for wrongful death of a fetus. *See Witty,* 727 S.W.2d at 505. As early as 1740, the common law recognized that "an infant *in ventre sa mere* [in the womb] was a person *in rerum natura* (in the nature of things) 'so that both by the rules of the common and civil law, she was, to all intents and purposes, a child, as much as if born.'" *Witty,* 727 S.W.2d at 509 (Kilgarlin, J., dissenting) (quoting Sir William Blackstone of England and Lord Chancellor Hardwicke). *See also Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 86–87 (Tex.1997) (Gonzalez, J., dissenting) ("At common law, the rights of a human being existed despite its unborn status.") (citing and quoting from the Commentaries of Sir William Blackstone).

 Texas courts adhere to the principle that "[e]quity will not suffer a right to be without a remedy."[14] The Texas Supreme Court has recognized, "[i]f the plaintiff has a right, he must of necessity have a means to vindicate and maintain it * * *. It is a vain thing to imagine a right without a remedy." *Miers v. Brouse,* 153 Tex. 511, 271 S.W.2d 419, 421 (1954) (quoting Lord Holt). *See also Chandler,* 294 S.W.2d at 807 (where, on the premise that equity will not suffer a right to be without a remedy, the supreme court refused to deny the remedy of an equitable cause of action to *creditors* who had no *legal* remedy). Strikingly, this state's wrongful death and survival statutes relegate parents of a fetus whose viability has been terminated by another's negligent act to a status lower than that of *creditors* who at least were allowed to pursue an equitable remedy, a creditor's bill, when no law remedy was available.

According to Sir William Blackstone, the origin of the common law concept of allowing injured citizens access to the courts to redress wrongs done to them is at least as old as *The Magna Carta,* established by King John of England at Runnymede on June 15, 1215. When discussing "the absolute rights of every Englishman," Blackstone wrote that "[The Magna Carta] is declaratory of the principal grounds of the fundamental laws of England ... [and which] is directed to be allowed as the common law."[15] Blackstone further comments that a "right of every Englishman is that of applying to the courts of justice for redress of injuries.... The emphatical words of *Magna Carta* spoken in the person of the king, [are that] 'for injury done to him by any other subject ... [the victim] may take his remedy by the course of

---

**14.** *Chandler v. Welborn,* 156 Tex. 312, 294 S.W.2d 801, 807 (1956). *See also In re York,* 951 S.W.2d 122, 127 (Tex.App.—Corpus Christi 1997, no writ); *Mapco, Inc. v. Carter,* 808 S.W.2d 262, 273 (Tex.App.—Beaumont 1991), *rev'd on other grounds,* 817 S.W.2d 686 (Tex.1991); *King v. Acker,* 725 S.W.2d 750, 754 (Tex.App.—Houston [1 st Dist.] 1987, no

writ); *Stout v. Christian,* 593 S.W.2d 146, 151 (Tex.Civ.App.—Austin 1980, no writ); *State v. Pounds,* 525 S.W.2d 547, 551 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.).

**15.** Blackstone, *Commentaries on the Law of England,* Vol. 1, pp. 122–24 (1765).

the law, and have justice and right for the injury done him, freely without sale, without any denial, and speedily without delay.'"[16]

A cornerstone of our own system of democracy and justice is that it offers our citizens the fundamental confidence that none will be compelled to suffer the injustice of a negligently inflicted wrong without having the counterbalance of open access to the right to seek redress in a court system that is just and fair. Selectively and harshly denying that counterbalance to parents of an unborn child whose existing viability is terminated by another's negligent act brutally magnifies their loss, ostracizes those parents from a basic right accorded other citizens similarly situated, and transforms traditional concepts of fairness and justice into but a cruel mirage for the class of parents selected against.

Regardless of the common law's history, Texas' wrongful death statute since 1860 has existed for the express purpose of authorizing heirs, representatives, or relations of a deceased person to sue for and recover damages for the decedent's death that is caused by another's negligence or culpable, wrongful act. *See Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 851 (Tex.1995). If there had been a common law cause of action for wrongful death in Texas before 1860, it was preempted by the 1860 statute.

We have already noted several of the supreme court's holdings that have determined there is neither a common law nor a statutory cause of action available to parents whose viable fetus dies because of another's negligent conduct.[17] It is unconscionable that a tortfeasor may escape liability by killing an unborn baby, while at the same time being subject to liability if he only injures an unborn baby later born alive. Indeed, that peculiar dichotomy

should be shunned, as "shocking to the universal sense of justice." *Cf. Betts v. Brady*,[18] 316 U.S. 455, 476, 62 S.Ct. 1252, 1263, 86 L.Ed. 1595 (1942) (Black, J., dissenting). Otherwise, Texas parents are allowed to suffer a significant injury with no redress despite the constitutional assurance of due process and open courts.

Texas law has ostracized from *all* common law avenues of recovery those parents whose viable fetus has been lost due to another's negligence, and the ostracism is particularly egregious where, such as the present appeal, the negligent actor has stipulated that his negligence alone proximately caused the loss and where the treating physician testifies without contradiction that but for the negligent event, the dead baby would be alive and well. Such an egregious outcome for the wronged parents "cannot be reconciled with 'common and fundamental ideas of fairness and right.'" *Id.* Despite the apparent injustice to the facts of this case, the prevailing rule in Texas is that "[i]n order to establish an 'open courts' violation, a litigant must satisfy a two-part test: first, he must show that he has a well-recognized common-law cause of action that is being restricted." *Moreno*, 787 S.W.2d at 355. Because we are powerless to overturn the long line of Texas cases holding that there was no common law cause of action in this state for wrongful death, we must reject Appellees' "open courts" challenge as inadequate to support the summary judgment the trial court granted.

## GENDER DISCRIMINATION

■ Appellees' summary judgment motion also asked the trial court to reject gender discrimination and hold that the equal rights provisions of the state and

---

16. *Id.,* p. 137.

17. *See also Travelers Indem. Co.,* 892 S.W.2d at 850–51; *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 845 (Tex.1990); *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990).

18. Eventually overruled by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

279

federal constitutions entitle John, as the father of a viable fetus whose viability was destroyed by the negligent act of another, to recover damages for his mental anguish, just as those provisions entitle Dori to do. Appellees argue persuasively that although Cheri was carried in Dori's womb, she was formed with John's sperm and therefore was a part of John's body as much as a part of Dori's. Were that not so, we would have to assume that the physiology of every living person derives only from the mother and that a child's physiological makeup includes no part of the father. We have no credible basis for that assumption.

For more than a quarter of this century, the Texas Equal Rights Amendment has been part of the Texas Constitution. *See* TEX. CONST. art. I, § 3a. It provides that "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." *Id.* "[T]he characteristic injury of [gender] discrimination lies not in the failure to be treated on a gender-blind basis, but rather in being deprived of ... opportunity *because* one is a woman, or *because* one is a man." LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 16–29, at 1580 (2d ed.1988). "[T]he Equal Rights Amendment is more extensive and provides more specific protection than both the United States and Texas due process and equal protection guarantees." *McLean,* 725 S.W.2d at 698. This does not yield except to "compelling state interests." *Id.*

Among the grounds Appellees asserted in their summary judgment motion is that allowing Dori to recover damages for her mental anguish on the facts of this case while refusing to recognize John's right to recover damages for his own mental anguish is gender discrimination that unconstitutionally violates the Texas Equal Rights Amendment. The trial court agreed, and we agree because we perceive no compelling state interest in a gender-based denial of a father's right to recover damages for his own mental anguish from the negligently caused loss of his viable fetus, a denial which "perpetuates the myth that only a woman grieves and suffers the mental anguish caused by the loss of a baby in the womb." *Krishnan,* 916 S.W.2d at 483 (Gonzalez, J., dissenting). John pled a cause of action for his own mental anguish damages. Although Cheri was one-half John and was part of his body because she was formed with his sperm, denial of John's causes of action for his mental anguish on the facts of this case would discriminatorily deprive John of his guarantee of protection under the Texas Equal Rights Amendment. We overrule Appellant's third issue.

## CONCLUSION

Because Appellant has failed to meet his burden of establishing that Appellees are not entitled to summary judgment as a matter of law, we affirm the trial court's summary judgment.

RICHARDS, J., recused.