**Christina Michelle BROWN and Cecil Ted Brown, individually and on behalf of The Estate of Dillon Ray Brown, deceased, Petitioners,**

v.

**Kalman Jay SHWARTS, M.D., and Navarro Memorial Hospital, Inc. d/b/a Navarro Regional Hospital, Respondents.**

No. 96–1224.

Supreme Court of Texas.

Argued Oct. 7, 1997.

Decided March 13, 1998.

Rehearing Overruled July 3, 1998.

George (Tex) Quesada, Dallas, for Petitioners.

Kevin J. Keith, Jonathan B. Skidmore, Gregory W. Curry, Scott Patrick Stolley, Robert P. Crumpler, John H. Martin, Dallas, for Respondents.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and ENOCH, SPECTOR, OWEN, BAKER and ABBOTT, Justices, join.

This case raises two questions concerning limitations on health care liability claims for negligent treatment of a child. *First:* if treatment occurred while the child was *in utero,* can limitations begin to run before birth? *Second:* if the child dies after being born, when does limitations run? The lower courts held that plaintiffs' wrongful death and survival claims were barred by limitations. *Brown v. Shwarts,* 929 S.W.2d 609 (Tex.App.—Waco 1996). We hold that only the wrongful death claim is barred and thus reverse and remand the survival claim for further proceedings.

Christina Michelle Brown went to the Navarro Memorial Hospital emergency room during her third trimester of pregnancy, complaining of nausea and continuing headaches, cough, and wetness in her pants. She was treated by Dr. Kalman Jay Shwarts, who ordered a sonogram and a hepatitis test and instructed Brown to return to the hospital if her symptoms worsened. Four days later Brown returned and was seen by another doctor. This time she was told that her membranes had ruptured and that she had been leaking amniotic fluid for several days, including when she saw Dr. Shwarts. She was admitted to the hospital and gave birth prematurely to a boy, Dillon, who died the next day. Two years and 76 days after Brown was treated by Shwarts, she and her husband filed suit against Shwarts and the Hospital asserting wrongful death and survival claims based solely on the treatment Brown received the day she saw Shwarts. The district court granted summary judg-ment for both defendants, holding that limitations barred the Browns' actions. The court of appeals affirmed. 929 S.W.2d 609. We granted the Browns' application for writ of error. 40 TEX. SUP.CT. J. 470 (Apr. 18, 1997).

The Browns' pleadings assert health care liability claims as defined by the Medical Liability and Insurance Improvement Act, TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (Vernon Supp.1998). Section 10.01 of the Act states:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim. Except as herein provided, this subchapter applies to all persons regardless of minority or other legal disability.

*Id.* § 10.01. Giving notice of a claim as required by the Act tolls the running of limitations for 75 days. *Id.* § 4.01(c); *Thompson v. Community Health Inv. Corp.,* 923 S.W.2d 569, 571 (Tex.1996) (per curiam); *De Checa v. Diagnostic Ctr. Hosp., Inc.,* 852 S.W.2d 935, 937–938 (Tex.1993). Thus, a health care liability claim must be filed within two years and 75 days of the date prescribed by Section 10.01.

Because Section 10.01 applies "[n]otwithstanding any other law," it governs wrongful death claims premised on negligent health or medical care, rather than the separate statute of limitations otherwise applicable to wrongful death actions, Section 16.003(b) of the Civil Practice and Remedies Code. *Bala v. Maxwell,* 909 S.W.2d 889, 892–893 (Tex.1995) (per curiam). There is no separate statute of limitations for survival actions. Thus, Section 10.01 governs both claims the Browns assert.

We have held that if the date a person is injured is known, limitations under Section 10.01 begins to run on that date.

*Jennings v. Burgess,* 917 S.W.2d 790, 793 (Tex.1996); *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987). The Browns argue that a different rule should apply for prenatal injuries. Pointing out that a health care liability claim is defined by the Act as an action for "injury to or death of the *patient*", TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(4) (emphasis added), the Browns contend that a fetus cannot be a patient, and that limitations therefore should not begin to run until the child is born. Were the Browns correct, their argument would defeat their action altogether. If a fetus could not be a patient, then there would be no cause of action for negligent treatment of the fetus because a health care liability claim is defined as one for injury to or death of the *"patient"*. But negligent treatment of a fetus is actionable if the child is born alive. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 346–347 (Tex.1992); *Yandell v. Delgado,* 471 S.W.2d 569 (Tex.1971) (per curiam); *Leal v. C.C. Pitts Sand and Gravel, Inc.,* 419 S.W.2d 820, 821 (Tex.1967). Since "a physician cannot be liable for malpractice unless the physician breaches a duty flowing from a physician-patient relationship", *St. John v. Pope,* 901 S.W.2d 420, 423 (Tex.1995), and a physician can be liable for negligently injuring a fetus if the child is later born alive, it follows that a fetus can be a patient. Thus, the Browns' argument for applying Section 10.01 differently when injuries are prenatal fails.

■ Limitations on a wrongful death action based on negligent health care is not tolled or extended because the decedent was a minor. *Baptist Memorial Hosp. Sys. v. Arredondo,* 922 S.W.2d 120, 121 (Tex.1996) (per curiam) (holding that "the tolling provision of section 10.01 that applies to a minor does not apply to an adult's wrongful death claims" for the death of a minor). This means that an action for the wrongful death of a child who lives more than two years after a prenatal injury will as a rule be barred by limitations, but the same result ensues when the decedent is an adult. *Russell,* 841 S.W.2d at 348. While there are circumstances when this result will seem harsh, it is well within the Legislature's prerogative to prescribe the limitations period

for a wrongful death claim which, it must be remembered, did not exist at common law and is a creature of statute. *Bala,* 909 S.W.2d at 892–893.

■ The Browns had two years from the date Dr. Shwarts treated Dillon—which was just five days short of two years from the date of Dillon's death—to give notice of their wrongful death claim, and they did so. This notice triggered the 75–day tolling period, effectively enabling the Browns to file suit within two years and 75 days of Shwarts's treatment. The Browns waited one day too long to file suit. We conclude that their wrongful death action is barred by limitations.

■ The Browns' survival action is the same action Dillon had the day he died. TEX. CIV. PRAC. & REM.CODE § 71.021; *Russell,* 841 S.W.2d at 345. The Browns' rights are wholly derivative of Dillon's, the injury is that which he suffered, and the damages are those he sustained while he was alive. *Id.* As we have already explained, limitations on Dillon's action began to run the day Shwarts treated him. Section 10.01 provides, however, that "minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the[ir] claim." The effect of this provision was to toll all running of limitations on Dillon's claim until his death. *Weiner v. Wasson,* 900 S.W.2d 316 (Tex.1995).

The Browns argue, however, that limitations continued to be tolled after Dillon's death, giving them at least until the fourteenth anniversary of Dillon's birth, TEX.REV. CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1998), to file their survival action. We disagree. Once Dillon died, he ceased to be a minor under twelve years old and the tolling provision in Section 10.01 no longer applied. Thus, limitations began to run at his death. Nothing in Section 10.01 suggests that the parents of a deceased minor should have as long as fourteen years to file a survival action when they have only two years in which to file a wrongful death action complaining of the same treatment. The only two courts to have considered this matter have reached the same conclusion. *See*

*Campos v. Ysleta Gen. Hosp., Inc.,* 879 S.W.2d 67, 73 (Tex.App.—El Paso 1994, writ denied) ("[T]he tolling provisions for children under twelve was clearly not meant to apply in wrongful death or survival cases."); *see also Cestro v. Medina,* 781 S.W.2d 640, 641 (Tex.App.—Eastland 1989, no writ). Moreover, the Browns' argument would apply equally to any survival action brought after the death of a minor, even if not based on a health care liability claim, tolling limitations as long as the decedent would have been a minor. The statutes of limitations do not indicate that a minor's survivors should have longer to assert their claims than the survivors of an adult.

Our opinion in *Russell* is not to the contrary. There we held that a plaintiff's survival action was untimely filed because the decedent's action would have been barred had he brought suit immediately prior to his death. We also explained that had the decedent's action not been barred at the time of his death, limitations would simply continue to run, interrupted only by the one-year tolling provision of Section 16.062 of the Civil Practice and Remedies Code.[1] Nothing in our opinion suggests, however, that a decedent's legal disability would continue to toll limitations after his death. No such issue was presented in *Russell.*

■ Nevertheless, the Brown's survival action is not barred. Limitations on Dillon's cause of action was tolled until his death, then began to run, and was tolled again for 75 days when the Browns gave the notice of their claim required by statute. Thus, the Browns had two years and 75 days from the date of Dillon's death within which to file their survival action, and they did so.

There is no inconsistency, contrary to the concurring opinion's argument, between our holding that a fetus can be a patient if later born alive and our holding in *Witty v. American General Capital Distributors, Inc.,* 727

S.W.2d 503 (Tex.1987), and *Edinburg Hospital Authority v. Trevino,* 941 S.W.2d 76 (Tex. 1997), that a fetus is not an "individual" under the Wrongful Death Act, TEX. CIV. PRAC. & REM.CODE § 71.002. In fact, *Witty* recognized the same distinction, stating that "[t]he fetus has no cause of action for the injury, until subsequent live birth." 727 S.W.2d at 505.

Accordingly, we reverse the judgment of the court of appeals as to the Browns' survival action and remand that action to the district court for further proceedings.

HANKINSON, J., did not participate in the decision.

GONZALEZ, Justice, concurring, joined by ABBOTT, Justice, with respect to Part II, and BAKER and ABBOTT, Justices, with respect to Part III.

I

There is . . . no negligence cause of action arising out of the treatment or injury of a fetus.

. . . .

. . . [T]his court declines to overrule its prior opinions and continues to hold that "there is no wrongful death or survival cause of action for the death of a fetus." [*Pietila v. Crites,* 851 S.W.2d 185 (Tex. 1993); *Blackman v. Langford,* 795 S.W.2d 742 (Tex.1990); *Witty v. American Gen. Capital Distribs., Inc.,* 727 S.W.2d 503 (Tex.1987); *Tarrant County Hosp. Dist. v. Lobdell,* 726 S.W.2d 23 (Tex.1987) ]. Furthermore, the Legislature has not amended the wrongful death and survival statutes to create a wrongful death or survival cause of action for loss of a fetus.

*Krishnan v. Sepulveda,* 916 S.W.2d 478, 479–81 (Tex.1995).

---

1. Section 16.062(a) of the Civil Practice and Remedies Code states that "[t]he death of a person against whom or in whose favor there may be a cause of action suspends the running of an applicable statute of limitations for 12 months after the death." The Browns do not argue that Section 16.062(a) applies to health care liability claims, and the only two courts that have ad-

dressed the issue have held that Section 16.062(a) does not apply because of the "notwithstanding any other law" provision in Section 10.01. *Wilson v. Rudd,* 814 S.W.2d 818, 821 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Rascoe v. Anabtawi,* 730 S.W.2d 460, 461 (Tex.App.—Beaumont 1987, no writ).

Without overruling any of the above cases, the Court today holds that the Browns, whose claims resulted from the alleged negligent treatment of their son in utero, "waited one day too long to file [the wrongful death] suit," 968 S.W.2d at 334, but that "the Browns' survival action is not barred." 968 S.W.2d at 335. In so holding, the Court finally recognizes that because "a physician can be liable for negligently injuring a fetus, it follows that a fetus can be a patient." 968 S.W.2d at 334. Unfortunately, when viewed alongside the Court's previous writings, today's opinion adds confusion to an already muddled area of the law and does nothing to resolve the tension in our opinions.

Nevertheless, while I cannot join the Court's writing, I concur in its judgment. It is clear that the statute of limitations on the Browns' survival action, which is wholly based on Dillon's injury and the damages Dillon suffered, was tolled until Dillon's death. TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1998) ("Medical Liability Act"). Therefore, the survival action is not barred.

I also agree that under sections 4.01(c) and 10.01 of the Medical Liability Act, a wrongful death action filed more than two years and 75 days after the occurrence of the breach or tort against an unborn *patient* is barred by limitations. I have consistently urged the Court to recognize that such a *patient* should be able to recover for its injuries received in the womb, regardless of whether the *patient* is later born alive. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 85–92 (Tex. 1997) (Gonzalez, J., dissenting); *Krishnan*, 916 S.W.2d at 483–90 (Gonzalez, J., dissenting). Under the absolute statute of limitations of the Medical Liability Act, the clock starts running from the date of breach or tort against the *patient* whose injury or death forms the basis for the health care liability claim. Therefore, I agree with the Court's disposition of this case.

However, I am concerned with the inconsistency in holding that for the purposes of the statute of limitations of the Medical Liability Act, a fetus is a *patient*, when this Court has unwaveringly held that under the Wrongful Death Act, a fetus is not an *individual*, and therefore may not recover for its wrongful death if that fetus (*patient*) happens to die in utero. *See Trevino*, 941 S.W.2d at 78, 79 n. 1; *Witty*, 727 S.W.2d at 504 (stating that the Legislature did not intend the word "individual" to include an unborn fetus). The Medical Liability Act does not define "patient." Still, the Court is willing to say that under that Act, a fetus is a patient, as a doctor/patient relationship clearly exists between a doctor and fetus. 968 S.W.2d at 334. But on the other hand, in *Witty*, 727 S.W.2d at 504, the Court faced a similar situation involving the absence of a legislative definition, yet reached a contrary result.

The Wrongful Death Act allows a cause of action for damages "arising from an injury that causes an individual's death." TEX. CIV. PRAC. & REM.CODE § 71.002(a). But the Legislature did not define "individual" in the statute. Nonetheless, the Court held that when enacting the statute, the Legislature did not intend the word "individual" to include a fetus, *Witty*, 727 S.W.2d at 504, despite a complete absence of evidence of what the Legislature intended, and without any reasoning, discussion, or analysis of such intent. *Id.* at 507 (Kilgarlin, J., dissenting).

In fact, the Court's analysis in *Witty* centered around the fact that the Wrongful Death Act previously provided recovery for the death of any "person," and substituting the word "individual" was intended to be a nonsubstantive change. *See Witty*, 727 S.W.2d at 504. Essentially the Court's summary conclusion was that a fetus is not an "individual" because a fetus is not a "person." However, there are numerous sources that indicate that a patient is a "person." *See* TEX. HEALTH & SAFETY CODE § 313.002(8) (defining a patient as "a *person* who is admitted to a hospital ....") (emphasis added); TEX.REV.CIV. STAT. ANN. art. 4495b, § 5.08(m) (Vernon Supp.1998) (defining a patient as "any *person* who consults or is seen by a person licensed to practice medicine to receive medical care") (emphasis added); TEX.R. CIV. EVID. 509(a)(1) (defining a patient as "any *person* who consults or is seen by a physician to receive medical care") (emphasis added); BLACK'S LAW DICTIONARY 1126 (6 th

ed.1990) (defining a patient as a *"Person under medical or psychiatric treatment and care"*) (emphasis added). If indeed a fetus is a patient, as the Court admits, how does it follow that a fetus is necessarily *not* a person or individual for the purposes of wrongful death jurisprudence?

The *Trevino* Court followed *Witty* and stated that it would be up to the Legislature to rewrite the Wrongful Death Act to include under the definition of *individual* a fetus, which according to the Court today, is a *patient.* Therefore, the Court finds itself in the following untenable position: it recognizes in the present case, with no guidance from the Legislature, that a fetus is a patient, while at the same time, *because* there has been no guidance from the Legislature, it adheres to the antiquated concept that a fetus is *not* an "individual" in the area of wrongful death jurisprudence. If the Court had simply recognized, at my urging in *Krishnan* and *Trevino,* that there is no limitation in the Wrongful Death Act that prevents us from construing the word "individual" to mean an unborn baby, the Court would not find itself in such a pickle.

## II

Nevertheless, this predicament can be remedied by legislative action. Just over a year ago in *Trevino,* I called upon the Court to abandon the anachronistic rule of law that dictates that parents cannot recover for the wrongful death of their unborn child, and urged the Court to join the overwhelming majority of jurisdictions that allow such recovery. *Trevino,* 941 S.W.2d at 86 & n. 1 (Gonzalez, J., dissenting). As mentioned earlier, the *Trevino* Court deferred to the Legislature, stating, "If the law is to change, it would be up to the Legislature, not this Court, to rewrite [the Wrongful Death Act] to allow the cause of action that Justice Gonzalez seeks to create." *Id.* at 79 n. 1.

I still adhere to the view that the Legislature, by providing a cause of action for the wrongful death of an "individual," has done all that is necessary for us to recognize a tort for an unborn baby's wrongful death. The mistake, as I have reiterated time and again, was this Court's interpretation of the Wrong-

ful Death Act in *Witty.* However, it is abundantly clear that my colleagues will not overrule *Witty* and its progeny.

## III

Therefore, I now call on our Legislature to bring Texas in line with the vast majority of jurisdictions that recognize a wrongful death cause of action for the death of a fetus. *Id.* at 86 n. 1 (Gonzalez, J., dissenting) (listing thirty-nine jurisdictions that recognize some form of action to recover damages for an unborn child's death); *see Santana v. Zilog, Inc.,* 95 F.3d 780, 783 n. 3 (9th Cir.1996) (pointing out that only nine jurisdictions do not allow wrongful death causes of action for any fetus, regardless of viability). The reasons to recognize such a claim are many, as I have exhaustively detailed in my previous dissents in *Trevino* and *Krishnan. Trevino,* 941 S.W.2d at 85–92 (Gonzalez, J., dissenting); *Krishnan,* 916 S.W.2d at 483–90 (Gonzalez, J., dissenting).