IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-1061

════════════

 

Fort Worth Osteopathic
Hospital, Inc., D/B/A/ Osteopathic Medical Center of Texas, Craig Smith, D.O.,
and Reid Culton, D.O., 

Petitioners,

 

v.

 

Tara Reese and Donnie Reese,
Individually and as Legal Representatives of the Estate of Clarence Cecil
Reese, Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Second District of
Texas

════════════════════════════════════════════════════

 

Argued October 8,
2003

 

 

Justice Smith, dissenting.

 

This
medical malpractice case arises from treatment provided to Tara Reese and her
unborn child, named Clarence Reese by the parent-plaintiffs, who died in utero on May 12, 1998. 
Citing Witty v. American General Capital Distributors, Inc., 727
S.W.2d 503 (Tex. 1987), the defendants assert that health care providers owe no
legal duty of reasonable care to a human fetus who dies before birth.  In response, the plaintiffs request that we
overrule Witty and recognize a cause of action under both the wrongful
death statute and the survival statute for negligence that causes the prenatal
death of a viable fetus.

The
wrongful death statute provides: AAn
action for actual damages arising from an injury that causes an individual=s death may be brought if liability
exists under this section.@  Tex.
Civ. Prac. & Rem. Code '
71.002(a) (emphasis added).  The survival
statute provides: AA cause
of action for personal injury to the health, reputation, or person of an
injured person does not abate because of the death of the injured person
. . . .@  Id. '
71.021(a) (emphasis added).

The
initial question presented in this case is whether the words Aindividual@
and Aperson@ include a viable fetus who dies before
birth.  Relying on Alegislative acquiescence@ and stare decisis,
the Court concludes that they do not.  I
disagree.

I

The
Texas Wrongful Death Act was enacted by the 8th Legislature[1] and the
Texas Survival Act was enacted by the 24th Legislature.[2]  Before the plaintiffs=
causes of action accrued, no relevant parts of those enactments had been
substantively amended.[3]  Therefore, in resolving this case, the Court
must ascertain and effectuate the intent of the enacting Legislatures.  See Crown Life Ins. Co. v. Casteel, 22
S.W.3d 378, 383 (Tex. 2000) (AThe
primary rule in statutory interpretation is that a court must give effect to
legislative intent.@); Manry v. Robison, 56 S.W.2d 438, 447 (Tex.
1932) (A[I]n the
absence of some specific amendment we should give [a statute] the meaning which
it had at the time of its enactment.@).

In
my view, when adopting the wrongful death act and the survival act, neither the
8th Legislature nor the 24th Legislature intended to exclude a viable human
fetus who dies before birth.  In
addition, when construing a statute, a court should not draw any inference
regarding the intent of the enacting legislature from the inaction of
subsequent legislatures.  My position
regarding what is commonly referred to as Alegislative
acquiescence@ is
consistent with the majority of jurisdictions. 
See, e.g., Helvering v. Hallock, 309 U.S. 106, 119-20 (1940) (ATo explain the cause of non-action by
Congress when Congress itself sheds no light is to venture into speculative
unrealities.@).  Finally, I believe that the Court is not
constrained in this case by its prior decisions.  An analysis of the factors traditionally
considered by courts establishes that Witty and its progeny are weak
precedent.  Moreover, the initial
question presented in this case is too important to be resolved solely on the
basis of stare decisis.

The
Court should abandon the interpretation of sections 71.002 and 71.021 of the
Civil Practice and Remedies Code first announced in Witty.[4]  Instead, we should construe Aindividual@
and Aperson@ to include a fetus, as urged by
Justice Kilgarlin in his Witty dissent, which was joined by Chief
Justice Hill and Justice Ray.  Witty,
727 S.W.2d at 506‑12.  Similarly,
we should adopt the reasoning of Justice Gonzalez=s
dissents in Krishnan v. Sepulveda, 916 S.W.2d 478, 483‑89 (Tex.
1995) and Edinburg Hospital Authority v. Treviño, 941 S.W.2d 76, 85-92 (Tex. 1997), which assert
that a fetus falls within the definitions of Aindividual@ and Aperson.@[5]

Given
my view of the proper interpretation of Aindividual@ and Aperson@ in the wrongful death and survival
statutes, I do not reach the substantial constitutional issues raised in this
case because the plaintiffs=
causes of action would be statutorily recognized.[6]  I also do not reach the issue regarding
whether Tara Reese, the mother, raised a fact issue on her own claim for
medical malpractice.  Finally, because of
my concern about the Court=s
analysis regarding whether a viable human fetus is a Aperson@ under the equal protection provisions
of the United States Constitution and the Texas Constitution, I do not join any
part of the Court=s
opinion.

                                                                                  II                                                       

I
recognize the importance of stare decisis and
acknowledge that precedent must not be lightly discarded.  However, A[s]tare
decisis is not an inexorable command; rather, >it is a principle of policy and not
a mechanical formula of adherence to the latest decision.=@  Payne v. Tennessee, 501 U.S. 808, 828
(1991) (quoting Helvering v. Hallock, 309 U.S. 106, 119 (1940)).

Recognizing
that the doctrine of stare decisis is not absolute,
this Court has previously overruled itself in this specific area of the
law.  In Treviño,
Justice Gonzalez noted:

 

In Leal v. C.C.
Pitts Sand & Gravel, Inc., 419 S.W.2d 820, 821 (Tex. 1967), this Court
held that parents of a viable infant born alive have a cause of action under
the Wrongful Death Statute if the baby later dies from injuries inflicted while
in utero.  In
the process, we overruled Magnolia Coca Cola Bottling Co. v. Jordan, 124
Tex. 347, 78 S.W.2d 944 (1935), citing one legal writer who remarked that A[s]eldom in
the law has there been such an overwhelming trend in such a relatively short
period of time as there has been in the trend towards allowing recovery for
prenatal injuries to a viable infant.@  Leal, 419 S.W.2d at 822.

 

Treviño, 941 S.W.2d at 88 (Gonzalez, J.,
dissenting).  Like Magnolia Coca Cola
Bottling Co. v. Jordan, Witty was wrongly decided and should be
overruled.  Cf. Sanchez v.
Schindler, 651 S.W.2d 249, 251 (Tex. 1983) (overruling March v. Walker,
48 Tex. 372, 375 (1877)CAIt is time for this court to revise its
interpretation of the Texas Wrongful Death statutes . . . .@).

Texas
courts have recognized several factors that weaken the precedential
value of an opinion.  For example, the
Court of Criminal Appeals utilizes the following factors when determining
whether to overrule precedent: 1) the original decision was flawed from the
outset, due to flawed reasoning, lack of authority, or misplaced reliance upon
cited authorities; 2) the decision conflicts with other precedent; 3) the
decision has been undercut by the passage of time; 4) the decision produces
inconsistency and confusion in the law; and 5) the decision consistently
creates unjust results.  Hammock v.
State, 46 S.W.3d 889, 892-93 (Tex. Crim. App.
2001).  The foregoing factors are present
in this case, as are additional considerations that undermine the precedential value of Witty and its progeny.

A

Witty
was wrongly decidedCits
reasoning was flawed and it lacked authority. 
Rather than replicate verbatim the lengthy and eloquent dissents
authored by Justices Kilgarlin and Gonzalez, I adopt by reference their
reasoning concerning the proper interpretation of Aindividual@ and Aperson@ in the wrongful death and survival
statutes.  The dissents in Witty, Krishnan,
and Treviño demonstrate that the common law
definition of Aperson@ during the period when the wrongful
death act and the survival act were enacted treated a human fetus as a legal
person and that other historical evidence indicates the enacting Legislatures
intended to include a fetus within the meaning of Aperson@ for purposes of those acts.

Justices
Kilgarlin and Gonzalez conducted an extensive examination of the common law
concerning legal personhood, dating to its eighteenth century English origins,
and produced persuasive evidence that a fetus was regarded as a legal person
under the common law during the last half of the nineteenth century.[7]  The majority in Witty did not dispute
or otherwise directly address the dissent=s
historical evidence regarding the common law definition of Aperson@
and failed to consider how the common law informed the understanding and intent
of the enacting Legislatures.

In
his dissent in Witty, Justice Kilgarlin also stated:

 

In Chapter IX of
that Code, entitled AOf
Homicide,@ the
legislature provided A[t]he
person upon whom the homicide is alleged to have been committed, must be in
existence by actual birth.@  Tex. Pen. Code art. 545 (1856); Oldham &
White, Digest, Laws of Texas 425 (1859); Paschal, Digest of the Laws
of Texas, Vol. I, article 2206.  If
the legislature found it necessary to limit persons upon whom a homicide could
be committed to those born alive, can we not infer two things?  One, is there not another category of Apersons@
than those in existence by actual birth? 
If so, that is a concession that a fetus was a person, but that the
legislature did not intend to follow Athe
antient law,@
and make it the subject of a homicide. 
Two, if the legislature found it necessary in the 1856 Penal Code to
qualify Aperson@ to one born alive, why did not the
Wrongful Death Act contain the same qualification?  Law of February 2, 1860 ch.
35, 1860 Tex. Gen. Laws 32, 4 H. Gammel, Laws of
Texas 1394 (1898).  Can it not be
argued that had the legislature intended a similar limitation on Aperson,@
it would have said so, contrary to the assertion by the court Athat the legislature did not intend the
words >individual= or >person= to be construed to include an unborn
fetus.@  727 S.W.2d at 504.

 

Witty,
727 S.W.2d at 510.

It
is also significant that the Legislature criminalized abortion in 1854.[8]  The Texas law outlawing abortion was part of
a national movement that began in the mid-nineteenth century.  By 1860, twenty of the thirty-three states
had outlawed abortion by statute.  By
1880, abortion was illegal in every state. 
See Eva R. Rubin, Abortion,
Politics, and the Courts: Roe v. Wade and Its Aftermath 13-15
(1987).  The relevance of the 1854
enactment outlawing abortion to the understanding and intent of the Legislature
that adopted the wrongful death act in 1860 is clear: it is unlikely that only
three regular sessions later, the Legislature had fundamentally altered its
view regarding whether a fetus should be recognized as a legal person.  In addition, when the survival act was
adopted in 1895, the 1854 abortion enactment remained in effect.

B

Another
factor undermining Witty is that it conflicts with other, more recent
precedent.  In Brown v. Shwarts, 968 S.W.2d 331 (Tex. 1998), the Court
concluded that, in a wrongful death suit involving a child who died the day
after birth, limitations began to run from the time the prenatal injury
occurred.[9]  The test to determine when the statute of
limitations begins to run on a tort action is whether the act causing the
damage constitutes a legal injury.  See,
e.g., Atkins v. Crosland, 417 S.W.2d 150, 153 (Tex. 1967).  Shwarts
conflicts with Witty because, under Witty, there is no legal
injury giving rise to a wrongful death or survival cause of action until the child
is born alive.  Based on Witty,
any legally recognized injury is merely hypothetical until birth occursCpotentially many months after
limitations begin to run under Shwarts.  Witty cannot be reconciled with Shwarts in light of well-established limitations
principles.

Witty
is also in tension with some of this Court=s
earlier jurisprudence that remains good law. 
In Nelson v. Galveston, Harrisburg & San Antonio Railway Co.,
14 S.W. 1021 (Tex. 1890), the Court concluded that a pregnant mother could
bring wrongful death and survival actions against her deceased husband=s employer on behalf of their unborn
child, relying in part on the common law:

 

Perhaps no case,
when it was decided in 1798, involved more important rights than that of Thellusson v. Woodford, 4 Ves.
319.  Counsel and judges of high
authority engaged in its discussion and decision.  Replying to the contention that an unborn
child was a nonentity, and, in that case, the limitation was therefore void,
Mr. Justice Buller said: ALet
us see what the nonentity can do. He may be vouched in a recovery, though it is
for the purpose of making him answer over in value.  He may be an executor.  He may take under the statute of
distributions.  He may have an
injunction, a guardian.@

 

Id. at
1022.  The Nelson Court further
noted: AWe think,
also, that the plaintiff in this case, although unborn at the time of his
father=s death,
was in being, and one of his surviving children.@  Id. at 1023.  The majority in Witty acknowledged
that Nelson remained good law.  See
Witty, 727 S.W.2d at 505.

C

Witty
has been undercut by the passage of time. 
The majority in Witty stated that Aby
a ratio of better than two to one, the majority of states have ruled in favor
of permitting a wrongful death action on behalf of an unborn fetus . . . .@ 
Id.  The dissent clarified
that thirty-five states and the District of Columbia had ruled in favor of
permitting those actions and only eight states had ruled against.  Id. at 512.

At
the time Witty was decided, Montana and North Carolina were included
among the eight states that did not Aallow
this type of recovery.@  Id. at 512 n.3.  Both states have since recognized a wrongful
death action for a viable fetus who dies before birth.  See Strzelczyk
v. Jett, 870 P.2d 730, 733 (Mont. 1994) (holding that a Afull-term fetus should be considered a >person=@); DiDonato
v. Wortman, 358 S.E.2d 489, 491 (N.C. 1987)
(holding that Athe word >person=
in the Wrongful Death Act includes a viable fetus@).  Arkansas has also since recognized an action
for a viable fetus who dies before birth. 
See Aka v. Jefferson Hosp. Ass=n, Inc., 42 S.W.3d 508, 512 (Ark.
2001) (overruling Arkansas Supreme Court precedent that a Aviable fetus is not a >person=
within the meaning of Arkansas=s
wrongful-death statute@).

Although
not unanimous, an overwhelming majority of jurisdictions continues to recognize
a wrongful death action for negligent conduct that causes the prenatal death of
a viable fetus.

D

Witty
and its progeny have produced inconsistency and confusion in the law.  One example is the different resolution of
the mental anguish claims in Treviño and
in this case.  Relying on Witty,
the Court in Treviño stated:

 

Mora sought to prove
mental anguish damages in part by presenting evidence that she had made
preparations in expectation of the arrival of her baby: she had set aside a
room in her home for the baby and purchased furniture for the room.  She also testified that the loss of the fetus
Astill hurts [her] like it was
yesterday,@ that she
carries a clipping of the funeral service with her, and that her marriage
deteriorated after the loss of the fetus. 
This evidence relates to the grief that Mora felt over the loss of the
fetus as a separate individual and not as part of her own body.  Krishnan and our decision today
clarify that a woman can recover mental anguish damages resulting from
negligent treatment that causes the loss of a fetus as part of the woman=s body.

 

Edinburg Hosp. Auth. v. Treviño,
941 S.W.2d 76, 79 (Tex. 1997).

In
this case, the Court attempts to distinguish Tara Reese=s
testimony from Shirley Mora=s
testimony.  However, the testimony of the
two women is in fact very similar.  Reese=s affidavit stated:

 

On the morning of
May 12, 1998, I was told that our baby had died.  I was devastated.  I had carried this baby for almost eight
months and then that part of me was suddenly gone.  When the baby died, a part of me died too.

 

The feeling of
carrying a part of me that was no longer living is difficult to describe.  To make it worse, I had to go through a long
and painful delivery, knowing our baby was dead.  I will never forget that feeling as long as I
live.

 

Afterwards, I cried
uncontrollably because of what happened to us. 
There were many nights when I could not sleep and had nightmares about
our loss.  My heart was broken.

 

My husband and I received
some counseling from our pastor, but I do not know if I will ever fully recover
from what happened.

 

Reese=s testimony is only semantically, not
substantively, different from that given by Mora.  Reese=s
statements express mental anguish above and beyond that resulting from the loss
of a part of her body, such as a finger.

The
Court=s
half-hearted and ultimately unconvincing attempt to distinguish Reese=s testimony from Mora=s testimony illustrates that the legal
artifice constructed by Witty, which equates a viable human fetus with a
finger or other part of a woman=s
body, is untenable.  Indeed, this legal
fiction is belied by the dichotomous biological reality wherein the fetus
receives blood and nourishment from the mother through the umbilical cord and
placenta, but possesses its own unique genetic makeup and organs.  While a fetus is profoundly interconnected
with the mother, it is at the same time growing and developing into a separate
human being.  A mother cannot reasonably
parse the mental pain and anguish she feels, distinguishing between the effect
of a miscarriage on her own body and the concomitant death of the fetus.  As a result, the standard established by Treviño and applied by the majority in this case is
simply a Amagic
words@ test
under which the mother must describe her mental anguish without making too
numerous or too explicit references to the deceased fetus.

E

The
rule announced in Witty continues to create unjust results.  It produces the counterintuitive consequence,
which was likely not intended by the enacting Legislatures, that Ait is more profitable for the defendant
to kill than to injure.@  Witty, 727 S.W.2d at 506-07
(Kilgarlin, J., dissenting).

Before
Witty, the Alabama Supreme Court recognized this injustice:

 

To deny recovery
where the injury is so severe as to cause the death of a fetus subsequently stillborn,
and to allow recovery where injury occurs during pregnancy and death results therefrom after a live birth, would only serve the tortfeasor by rewarding him for his severity in inflicting
the injury.  It would be bizarre, indeed,
to hold that the greater the harm inflicted the better the opportunity for
exoneration of the defendant.  Logic,
fairness and justice compel our recognition of an action, as here, for prenatal
injuries causing death before a live birth.

 

Eich v. Town of Gulf Shores, 300 So.2d 354,
355 (Ala. 1974) (footnote omitted).

This
year, New York=s highest
state court premised a decision on the same rationale.  See Broadnax
v. Gonzalez, 809 N.E.2d 645 (N.Y. 2004). 
In overturning its prior decision in Tebbutt
v. Virostek, 483 N.E.2d 1142 (N.Y. 1985), which
was similar to the Texas decision in Krishnan, the New York court
stated:

 

[W]e are no longer
able to defend Tebbutt=s
logic or reasoning.

 

As its dissenters
recognized, the rule articulated in Tebbutt
fits uncomfortably into our tort jurisprudence. 
Infants who are injured in the womb and survive the pregnancy may
maintain causes of action against tortfeasors
responsible for their injuries.  Further,
a pregnant mother may sue for any injury she suffers independently.  A parent, however, cannot bring a cause of
action for wrongful death when a pregnancy terminates in miscarriage or
stillbirth.

 

Injected into this
common law framework, Tebbutt engendered a
peculiar result: it exposed medical caregivers to malpractice liability for in utero injuries when the fetus survived, but immunized them
against any liability when their malpractice caused a miscarriage or
stillbirth.  In categorically denying recovery
to a narrow, but indisputably aggrieved, class of plaintiffs, Tebbutt is at odds with the spirit and direction of
our decisional law in this area.

 

Broadnax, 809 N.E.2d at 648 (citations omitted).

F

In
addition to the factors discussed above, the Court has recognized that, when
determining whether to overrule precedent, we should Apause
and consider how far the reversal would affect contracts and transactions
entered into and acted upon under the law of the Court.@  Thompson v. Kay, 77 S.W.2d 201, 207 (Tex.
1934) (quoting Sydnor v. Gascoigne, 11
Tex. 449, 455 (1854)).  The doctrine of
stare decisis has been strictly followed by this
Court in cases involving established rules of property rights.  Southland Royalty Co. v. Humble Oil &
Ref. Co., 249 S.W.2d 914, 916 (Tex. 1952). 
Stare decisis Ais
never stronger than in protecting land titles, as to which there is great
virtue in certainty.@  John G. & Marie Stella Kenedy Mem=l Found. v. Dewhurst,
90 S.W.3d 268, 281 (Tex. 2002).  In that
area and others involving vested property or contract rights, reversing
precedent may have the undesirable effect of Aupsetting
long‑settled expectations.@  See id.

Overruling
Witty will not upset existing economic arrangements based on long-settled
expectations.  Tortfeasors
have no long-settled expectation of immunity from causes of action arising out
of negligent conduct that results in the prenatal death of a viable fetus.  Cf. Moragne
v. State Marine Lines, 398 U.S. 375, 403-04 (1970) (overruling longstanding
United States Supreme Court precedent and recognizing wrongful death action
under general maritime lawCAIt can hardly be said that shipowners have molded their conduct around the possibility
that in a few special circumstances they may escape liability for such a
breach.@).

III

The
initial question presented in this caseCwhether
the words Aindividual@ in the wrongful death statute and Aperson@
in the survival statute include a viable human fetus who dies before birthCis sharply contested.  The defendants argue: AThe
Reese fetus was not born alive. 
Therefore, Texas law prohibits any recovery under the wrongful death and
survival statutes based on the >death= of the Reese fetus.@ 
In response, the plaintiffs argue: AThe
time has come for this Court to re-examine and narrowly overrule Witty
as it applies to viable unborn children, restore sanity to an area of
jurisprudence that is morally and legally repugnant, and bring Texas into step
with those states that recognize these claims.@

In
resolving this case, the Court does not assert that Witty was correctly
decided in 1987.  Rather, the Court
concludes in summary fashion that the original 6-3 decision should not be
overruled.[10]  However, whether the words Aindividual@
and Aperson@ include a fetus who dies before birth
is too important a question to be resolved in that manner.

Based
on the analysis set forth in parts I and II above, Witty should be
overruled.  Cf. Moragne, 398 U.S. at 405 (AFinally,
a judicious reconsideration of precedent cannot be as threatening to public
faith in the judiciary as continued adherence to a rule unjustified in reason,
which produces different results for breaches of duty in situations that cannot
be differentiated in policy.  Respect for
the process of adjudication should be enhanced, not diminished, by our ruling
today.@).

I
would affirm the court of appeals=
judgment.  The Court reverses in part and
affirms in part that judgment. 
Accordingly, I respectfully dissent.

 

 

____________________________________

Steven W. Smith

Justice

 

Opinion delivered:      August 27, 2004

 











[1] See Act approved Feb. 2, 1860, 8th Leg., R.S.,
ch. 35, 1860 Tex. Gen. Laws 32 (current version at Tex. Civ. Prac. & Rem. Code '' 71.001-71.020).





[2] See Act approved May 4, 1895, 24th Leg., R.S.,
ch. 89, 1895 Tex. Gen. Laws 143 (current version at Tex. Civ. Prac. & Rem. Code '' 71.021-71.030).





[3] In 2003, after the plaintiffs= causes of action accrued, the wrongful death statute
was amended.  See Act approved
June 20, 2003, 78th Leg., R.S., ch. 822, 2003 Tex.
Gen. Laws 2607.  The Act became effective
on September 1, 2003.  Among other
changes, the Legislature provided, for the first time, a definition of Aindividual@ in the
statute.  A>Individual= includes an unborn child at every stage of gestation
from fertilization until birth.@  Id. ' 1.01, sec. 71.001, 2003 Tex. Gen. Laws 2608.  The new statutory definition and the other
amendments to the wrongful death statute Aapply
only to a cause of action that accrues on or after the effective date of [the]
Act.@  Id. ' 1.04, 2003 Tex. Gen. Laws 2608.  Therefore, this case Ais governed by the law as it existed immediately
before the effective date of [the] Act.@  Id.





[4] In Witty, the Court noted: AThe recent codification of the Wrongful Death Act
provides recovery for >damages arising from an injury that causes an individual=s death.=  Tex. Civ. Prac. & Rem. Code Ann. ' 71.002(b) (emphasis added).  Prior to the codification, the Act provided
recovery of >damages on account of the injuries causing the death
of any person.=  Tex. Rev. Civ. Stat. Ann. art. 4671
(Vernon Supp. 1941‑1985) (emphasis added).  The legislature did not intend any
substantive change in the Act by substituting the word >individual= for the
word >person= in the recodification.  Tex.
Civ. Prac. & Rem. Code Ann. ' 10,
1985 Tex. Sess. Law Serv.
7219 (Vernon).@  Witty,
727 S.W.2d at 504.  The wrongful death
statute did not define Aindividual@ until
after the Reeses= causes
of action accrued.  The survival statute
uses Aperson@ throughout rather than Aindividual,@ and has never defined Aperson.@





[5] In his Treviño
concurrence, Justice Abbott stated: AI would
be inclined to overrule Witty and allow recovery for the wrongful death
of a fetus.  However, the Treviños have not made any argument to this Court that Witty
should be overruled.@ Treviño, 941 S.W.2d
at 85 (Abbott, J., concurring).





[6] Under the federal supremacy clause, we are bound by Roe
v. Wade, 410 U.S. 113 (1973) and its progeny.  However, the resolution of this case is not
controlled by that line of cases.  Roe
v. Wade does not foreclose state law remedies for negligent medical
treatment that, without the consent of the mother, causes the death of a human
fetus.  See, e.g., Summerfield
v. Superior Court, 698 P.2d 712, 723 (Ariz. 1985) (ARoe v. Wade
balances the rights of the fetus against the rights of its mother and concludes
that the latter=s right to privacy outweighs the former=s right to life in the first trimester of pregnancy;
it >neither prohibits nor compels= the inclusion of a fetus as a person for the purposes
of other enactments.@) (citation omitted); O=Grady v. Brown,
654 S.W.2d 904, 910 (Mo. 1983) (ARoe
v. Wade, while holding that the fetus
is not a >person= for purposes of the 14th amendment, does not mandate
the conclusion that the fetus is a legal nonentity.  >The
abortion issue involves the resolution of the mother=s rights as against the child when the two are in
conflict.  Whatever may be the
determination of the rights in that context, this special relation gives a
third-party tortfeasor no comparable rights.=@) (citation omitted).





[7] In concluding that Arizona=s wrongful death statute provided a cause of action
for a viable fetus who dies before birth, the Arizona Supreme Court provided a
scholarly analysis of the relevant common law. 
See Summerfield, 698 P.2d at 715-21.





[8] See Act approved Feb. 9, 1854, 5th Leg., ch. 49, ' 1, 1854 Tex. Gen. Laws 58.  The sentence for aborting a fetus was Aconfinement to hard labor in the Penitentiary not
exceeding ten years.@  Id.





[9] In resolving Shwarts,
the Court concluded that a fetus was a Apatient@ with a Adoctor‑patient@ relationship.  Shwarts, 968 S.W.2d at 334.  In a concurrence, Justice Gonzalez noted that
every definition of Apatient@
contained in a Texas statute referred to a Aperson@ or Aindividual.@  Id. at 336‑37 (Gonzalez, J.,
concurring).  The conclusion in Witty
that a fetus is neither an Aindividual@ nor a Aperson@ is therefore inconsistent with the conclusion in Shwarts that a fetus is a Apatient.@





[10] For example, the Court incorrectly asserts that the
Legislature has endorsed Athe holding of Witty.@  ___ S.W.3d at
___.  In fact, the Legislature rejected
this Court=s holding in Witty in 2003.  Witty involved a workplace injury that
caused the prenatal death of a viable fetus. 
See Witty v. Am. Gen. Capital Distrib.,
Inc., 697 S.W.2d 636, 638 (Tex. App.CHouston
[1st Dist.] 1985), rev=d
in part, 727 S.W.2d 503 (Tex. 1987)
(Kimberly Witty Aalleged that while employed by defendant as a
receptionist, she tripped over a utility outlet and fell with such force that
her unborn baby was fatally injured.@).  In reversing the court of appeals, this Court
specifically held that a fetus was not an Aindividual.@  Witty,
727 S.W.2d at 504.  If the same set of
facts occurred today, a similarly situated plaintiff would be entitled to bring
a wrongful death action against her employer for the death of her unborn
fetus.  See Tex. Civ. Prac. & Rem. Code '' 71.001-71.020.