IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-06-00359-CV

 

In re
Richard Owen Taylor

 

 



Original Proceeding

 



DISSENTING Opinion TO REQUESTING A RESPONSE










 

          Why?

          Why?  It is a question
that I asked frequently as a child.

          Why?  It is a question that was frequently critical
to ask clients and opponents when I was practicing law.

          Why?  It is a question I find myself asking
frequently as a judge.

          Why?  Why are we not dealing with the procedural
impediments to this mandamus before requesting a response?  The fee for filing
is unpaid and the petitioner only filed one copy of the petition.  Why not deal
with those issues first?[1]

          Why?  Why are we requesting a response when there is
no record upon which we can grant relief?

          Why?  Why are we requesting a response when there is
clearly an implied ruling, and possibly an express ruling, on the very motion
that the petitioner seeks to have us compel a ruling by the trial court?

          This is a pretty simple petition.  Taylor says he is entitled to obtain a ruling on a motion to clarify a prior order of the
trial court regarding communications with his children.  Taylor is in jail.  He
wants to have certain procedures regarding the manner in which he can
communicate with his children reduced to an order so that if those procedures
are violated that he can show that the mother of the children, the managing
conservator, is in contempt of the order.

          To effect that result, Taylor filed a motion for clarification of the divorce decree seeking a clarification of
the procedures by which he could communicate with his children.  In connection
with a hearing on the matter, according to the petition, the trial court
“instructed Richard [Taylor] that this case would only be heard if he raised it
in a modification proceeding.”  While I am quoting from Taylor’s petition, Taylor was not purporting to quote the trial court.

          But if what Taylor says happened is
even a close approximation of what the trial court told Taylor, it seems clear
to me that the trial court has ruled by implication on the motion, and may have
expressly ruled on the motion.  When the trial court told Taylor that, “if Taylor wanted relief on the issue, he needed to file a motion to modify,” that is as clear
an implied ruling, denying the motion to clarify, as I can imagine.  See
Tex. R. App. P. 33.1(a)(2)(A). 
Because I cannot tell from the petition if the trial court’s ruling was made in
open court on the record, or in some other form, I am unable to determine if
the specific word “denied” was used in response to the motion.  But telling a
litigant that they are not going to get any relief under the motion as filed,
and telling the litigant that another form for requesting the relief is the
only way the issue is going to be heard, is clearly a denial of the pending
motion.

          If we could properly address the
merits of the petition, getting past the procedural impediments, I would deny
the petition because the trial court has already ruled upon it.  Because the
majority requests a response, I respectfully dissent from their failure to
address the procedural impediments in proper order, and to their request for a
response.

 

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Dissenting
Opinion issued and filed November 22, 2006

Publish









[1]
 After the issues identified in this
dissenting opinion were discussed, and without notice to me or the opportunity
to participate in the decision by me, Taylor was granted pauper status.  There
was no effort by the majority to comply with Rule 5 or Rule 20.








es
effective and the existence of the association ceases except for the purpose of suits, other
proceedings, and acts necessary for the winding up of the association. Tex. Rev. Civ. Stat.
Ann. art. 1528f § 20 (Vernon 1997). The provisions of the Texas Business Corporation Act apply
to professional associations, except that the Texas Professional Association Act, Tex. Rev. Civ.
Stat. Ann. art. 1528f (Vernon 1997), applies in the event of any conflict between it and the
Texas Business Corporation Act. Id. § 25 (Vernon 1997). Inasmuch as the Business Corporation
Act provides that an existing claim is extinguished unless an action on the claim is brought within
three years of the date of dissolution, and there is no conflict with any provision of the Texas
Professional Association Act, we hold that Barrett’s claim was extinguished because it was not
brought within three years of the date of dissolution.
      Barrett contends that there is a conflict, inasmuch as her claim constitutes a suit necessary for
the winding up of the professional association, and section 20 of the Professional Association Act
provides that the existence of the association does not cease on the date of dissolution for the
purposes of such suits. We do not agree that this section of the Professional Association Act
continuing the existence of the association for the purpose of suits necessary for the winding up
of the association conflicts with the provision of the Business Corporation Act that claims are
extinguished if not filed within three years of dissolution.
      Barrett contends the conflict is that article 7.12 of the Business Corporation Act limits the
survival of a corporation to three years from the date of dissolution, whereas the Professional
Association Act extends the survivability of a professional association until all "suits, proceedings,
or other acts necessary for the winding up of the association" have concluded. It is true that article
7.12 provides that a dissolved corporation shall continue its corporate existence for a period of
three years from the date of dissolution for certain purposes. Tex. Bus. Corp. Act Ann. art.
7.12 § A (Vernon Supp. 2003). However, after providing that a corporation shall not be liable
for any claim other than an existing claim, the Act provides that if an action or proceeding on an
existing claim by or against the dissolved corporation is brought before the expiration of the three-year period following the date of dissolution, and the existing claim has not been extinguished, that
the dissolved corporation shall continue to survive (1) for purposes of an action or proceeding until
all judgments, orders, and decrees therein have been fully executed, and (2) for purposes of
applying or distributing any properties or assets of the dissolved corporation, as provided in
certain portions of article 6.04 of the Business Corporation Act, until such properties or assets are
so applied or distributed. Id. § C (Vernon Supp. 2003).
      From these provisions we see that the fact that the corporate entity is continued beyond the
three-year period following dissolution until suits involving existing claims have become final is
not inconsistent with certain existing claims being extinguished because they are not filed within
the three-year period following dissolution. Even if Barrett is correct in her assumption that her
existing claim is a suit necessary for the winding up of the association, the fact that the
Professional Association Act provides that the association continues for the purpose of such suits
generally is not inconsistent with a particular claim being extinguished because it was not filed
within the three-year period following dissolution. Therefore, there is no conflict between this
provision of the Professional Association Act and the provision in the Business Corporation Act
that existing claims are extinguished if not filed within the three-year period following dissolution. 
That being the case, it does not matter whether Durham was still in existence for the purposes set
forth in section 20 because Barrett’s claim was extinguished in that it was not filed within three
years of the date of Durham’s dissolution.
      Barrett argues that the issue of post-dissolution survival is determined by section 20 because
the Professional Association Act is not silent. She insists that by virtue of section 25 of the
Professional Association Act, the Business Corporation Act only fills in the gaps when the
Professional Association Act is silent. However, as Barrett acknowledges in her brief, section 25
provides that the Business Corporation Act is controlling unless there is a conflict between it and
the Professional Association Act. Tex. Rev. Civ. Stat. Ann. art. 1528f § 25 (Vernon 1997). 
As previously noted, we have found that there is no conflict between article 7.12 of the Business
Corporation Act and section 20 of the Professional Association Act. The Professional Association
Act is silent with respect to the extinguishment of claims. Consequently, article 7.12 of the
Business Corporation Act is controlling.
      Barrett contends that her interpretation that there is a conflict should control because the
Professional Association Act section 24 provides that:
Nothing in this Act shall remove or diminish any rights at law that a person receiving
professional services shall have against a person furnishing professional services for
errors, omissions, negligence, incompetence or malfeasance. The association . . . shall
be jointly and severally liable with the officer or employee furnishing professional
services for such professional errors, omissions, negligence, incompetence or
malfeasance on the part of such officer or employee when such officer or employee is in
the course of his employment for the association.
Tex. Rev. Civ. Stat. Ann. art. 1528f § 24 (Vernon 1997). We agree with Durham that the
intent of this section is to make sure that professionals would not be shielded from liability by
forming professional associations, not to protect Barrett from the application of article 7.12 of the
Business Corporation Act.
      Barrett urges that we should not interpret the Acts in this manner because of a public policy,
as recognized by Texas courts, of protecting an injured child’s claim during his or her period of
incapacity. She cites the cases of Weiner v. Wasson, 900 S.W.2d 316 (Tex. 1995) and Brown v.
Shwarts, 968 S.W.2d 331 (Tex. 1998). These cases, in dealing with the rights of minors to bring
cases, relied not on public policy of protecting an injured child’s claim, but on tolling provisions
of the Medical Liability and Insurance Improvement Act, Tex. Rev. Civ. Stat. Ann. art. 4590i,
§ 10.01 (Vernon Supp. 2003), and on the open courts provision of the Texas Constitution, Tex.
Const. art. I, § 13. Weiner, 900 S.W.2d at 318; Brown, 968 S.W.2d at 334-35. Barrett cites
no statute that would keep extinguished claims viable until some time after a minor reaches the age
of majority, nor does she contend that the statutory scheme of extinguishment of all claims when
not filed within three years after a corporation or association’s date of dissolution, including the
claims of minors, violates the open courts provision of the Texas Constitution. We sustain issue
one. In view of our determination of this issue, we need not consider Durham’s remaining issues.
      We reverse this cause and render judgment that Barrett, as guardian of the estate and of the
person of Jeffrey Dale Barrett, an incapacitated person, take nothing, with all court costs awarded
to Durham.

                                                                   JOHN G. HILL
                                                                   Senior Justice

Before Chief Justice Davis,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Reversed and rendered
Opinion delivered and filed May 7, 2003
[CV06]