## BRILEY v. KELTNER.

### No. 3459.

Court of Civil Appeals of Texas. Amarillo.

April 15, 1931.

Rehearing Denied May 20, 1931.

B. P. Maddox, of Tahoka, and York & Camp, of Abilene, for appellant.

G. H. Nelson, of Tahoka, and Lockhart, Garrard & Brown, of Lubbock, for appellee.

JACKSON, J.

The plaintiff, W. G. Briley, instituted this suit in the district court of Lynn county, Tex., against the defendant, C. B. Keltner, to recover the sum of $1,459.50, with interest thereon at six per cent. per annum from May 7, 1929, alleged to be due him by the defendant for his services as a real estate broker.

The plaintiff alleges that he is a real estate broker, and that the defendant, on May 7, 1929, was the owner of certain real estate situated in Tahoka, Lynn county, Tex., fully described in the petition; that some time prior to said date the defendant, as owner, listed said real estate with the plaintiff for sale or exchange on terms and conditions to be agreed upon between the defendant and any purchaser found by the plaintiff interested in such purchase or exchange; that the defendant was especially interested in exchanging his real estate for ranch property, and promised and agreed to pay plaintiff for his services 5 per cent. commission on a sale, and, if a purchaser was found who was willing to make an exchange of properties with the defendant on terms and conditions to be arranged and agreed upon between the defendant and such purchaser, the defendant promised and agreed to pay plaintiff 2½ per cent. commission on the exchange value of the property received by the defendant and 5 per cent. on the price secured in excess of the value of the property accepted by the defendant; that on May 7, 1929, the plaintiff procured a party in the person of J. W. Evans, with whom the defendant entered into a binding written contract to exchange his property in Tahoka, Tex., for the ranch property of the said Evans in Lampasas county, Tex.; that by the terms of said contract the defendant agreed to convey his real estate to J. W. Evans, and J. W. Evans agreed to convey his ranch to the defendant on the terms and conditions agreed upon between them and expressed in said written contract; that the plaintiff was the procuring clause of the making and execution of said contract for the exchange of the properties.

The plaintiff alleges the terms and conditions of said written contract, the value of the property agreed upon in the exchange, the price in excess of the agreed exchange value, and the amount of his commission based thereon, and attaches to his petition and makes a part thereof a copy of said contract; that, upon the execution of said contract, his commission was due and payable under his brokerage agreement with the defendant. He also alleges sufficient facts to authorize a recovery on quantum meruit.

He further pleads that, some time after the execution of the contract of exchange, the defendant and said Evans, by mutual agreement, agreed to cancel and did cancel said exchange contract without the knowledge or consent of the plaintiff, and the defendant has failed and refused to pay plaintiff his commission or any part thereof, to his damage in the amount above stated.

The defendant answered by general demurrer and general denial.

The case was submitted to the court without the intervention of a jury and judgment rendered that plaintiff take nothing by his suit and the defendant go hence with his costs, from which judgment this appeal is prosecuted.

The appellant, by several assignments, urges as error the action of the trial court in rendering judgment against him because the uncontroverted testimony shows that the appellee listed his property with appellant for sale or exchange, and promised that, if he found a party with whom an exchange was made, he would pay appellant 2½ per cent. commission on the exchange value agreed upon between appellee and such party, and 5 per cent. on the price received by appellee in excess of such agreed exchange value; that appellant found such party in the person of J. W. Evans, who was accepted by ap-

pellee, and a binding written contract for the exchange of their respective properties was made and executed by appellee and said Evans.

The appellant testified in substance that the appellee listed his property with him for sale or exchange; that appellee promised to pay him 5 per cent. commission on a sale and for an exchange deal 2½ per cent. on the exchange value of the property received by appellee and 5 per cent. on the price secured in excess of the value of the property accepted in exchange; that this was the usual and customary price, and was a reasonable charge for such services; that through a real estate broker, Mr. T. L. Duke of San Angelo, he got in touch with Mr. Evans as a probable customer; that he and Mr. Duke arranged to show, and did show, the property of appellee to Mr. Evans, and that he carried the appellee to Lampasas county and showed him Mr. Evans' ranch; that thereafter they brought Mr. Evans to Tahoka, Tex., and he and Mr. Keltner made the trade and entered into the written contract for the exchange of their properties; that at the time the contract was entered into the appellee knew that the ranch was under lease and understood the tenant was claiming damages for some fencing. That was all explained, and Mr. Evans was to straighten it out.

The contract, so far as necessary to a disposition of this appeal, provided for the exchange of the ranch property of Mr. Evans in Lampasas county for the real estate of the appellee in Tahoka, Tex. It recites the agreed value of the respective properties, the incumbrances against each, and that each party accepts the property of the other subject to the incumbrances against it, and that the appellee, in addition to the exchange value of the property he received, is to accept a vendor's lien note against the property to be conveyed to Evans for the sum of $5,000. The contract provides that each party is to furnish abstract showing good and valid title, for the correction of any defects; that Evans' property is under lease, which continues for two years after November 1, 1929, and is to be conveyed to appellee subject to said lease, and the rent accruing thereunder to be received by appellee after November 1, 1929.

The contract contains this provision: "If either party hereto fails or refuses to complete and perform all the conditions of this contract, he agrees to pay to the other party not at fault the sum of $3,000.00 as liquidated damages, as it is impossible to determine just what the damages for breach of said contract would be."

The testimony shows that appellee and Mr. Evans were brought together by appellant and Mr. Duke; that they entered into the contract for the exchange of their respective properties; that the time for the consummation of the deal as stipulated in the contract was extended by mutual agreement of the parties, and that the provision in the contract relative to liquidated damages for the breach thereof was by mutual consent canceled; that the tenant on the Evans ranch was holding under a written lease from A. C. Allen and Mattie Sanderson, the grantees of Mr. Evans; that the tenant was claiming that his lessors had failed to comply with the lease contract for which the tenant was claiming damages; that the tenant advised appellee of such claim, and that he intended to hold possession of the ranch until such damages were paid; that, on account of the tenant's claim that the lessors had failed to comply with the lease contract for the ranch, appellee stated he was turning the ranch down, as the lease would have a $5,000 loan against it at the time it expired; that, on receipt of this information, Mr. Evans wrote the appellee that he understood that appellee wanted to call the trade off and he could not blame him, in reply to which letter appellee's attorney advised Mr. Evans that it would be all right to call the trade off without liability against either party and consider the matter closed, and that, if Evans would release the appellee from any damages that he might think he had in the matter, the contract would be forgotten as a thing of the past; that, after this letter was sent and received, Mr. Evans and the appellee considered the exchange contract canceled and of no further force and effect. Mr. Evans testified that he was in a position to go ahead and close up the trade if Mr. Keltner had stayed with it and was in a position to deliver the title within the time covered by the extension agreement, which was oral.

The statement of facts shows that "it is agreed by the parties hereto that the value of the property agreed to be exchanged was as set out in the written contract offered in evidence."

The court finds that, at the time the contract of exchange was made, the plaintiff and Mr. Evans were informed by the appellee that he "wanted to know that there was no trouble sheet attached to the property that they proposed to exchange." This finding is substantially the language used by appellee while testifying as a witness in his own behalf. He made no explanation of what he meant by such statement, but the court interprets his meaning to be that he was not interested in exchanging for property where there was any question about the title or possession. This testimony and the finding of the court thereon, together with appellant's evidence that the claim of the tenant for damages was fully explained at the time the contract was made and that Mr. Evans was to adjust the tenant's claim for damages, we think clearly shows that appellee had notice of the claim of the tenant at the time the contract was executed, and that appellee accepted and relied on Mr. Evans to adjust the claim with the tenant;

that appellant acted in good faith, and disclosed all the information he had relative to such claim. The record shows that appellant was in no way responsible for the failure of Mr. Evans to adjust this controversy with his tenant, and was in no way responsible for the abandonment of the exchange contract by Mr. Evans and the appellee.

The appellee contracted that the land should be conveyed to him subject to this lease contract. The lease contract gave the tenant no lien against the ranch, and in no way incumbered the title thereto for any claim the tenant might have for damages because of the failure of his lessors to comply with their contract to build a fence, and the tenant could not have held possession of the ranch for a length of time greater than the lease contract provided.

■ The court finds that J. W. Evans was not at any time ready, willing, and able to exchange his property for the property of appellee, and that appellee offered to perform his part of the agreement, and would have done so except for the default of Mr. Evans. He concludes as a matter of law from such finding that appellant was not entitled to recover.

In our opinion, the testimony is insufficient to support these findings, but, if such findings were warranted from the evidence, they would not be a defense to appellant's claim for his commission, because the testimony shows that appellant was employed to find a party with property acceptable to appellee and with whom appellee was willing to contract for an exchange of his property on terms and conditions agreed upon between such party and the appellee; that appellant found J. W. Evans, interested him in the exchange, brought him and appellee together, and they entered into a valid contract on terms and conditions satisfactory to each of them for the exchange of their properties.

The court concludes as a matter of law that the contract was not capable of specific performance on account of the liquidated damage clause contained therein, and, because of this and his finding that Mr. Evans was not ready, willing and able to comply with the terms of the written contract, the appellant is not entitled to recover.

The record discloses that appellant was not authorized by appellee in the listing contract nor at any other time to make any price, any terms, or any conditions upon which an exchange would be made; that he was in no way responsible for the damage clause or any other clause contained in the contract. It will be noted that the liquidated damage clause does not bind either of the parties to the contract to accept the $3,000 provided therein as liquidated damages in lieu of specific performance, but, if it did, appellant had no authority to have such provision eliminated.

■ "A broker is entitled to compensation when he procures a purchaser with whom his principal is satisfied, and who actually contracts for the property at a price satisfactory to the owner." Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117, 118.

"When the seller enters into a binding contract with a purchaser acceptable to him, the seller assumes the risk as to whether or not the purchaser will be in position to perform his part of the contract, and that when such contract is so entered into by the seller the agent has performed all the duties that he can perform under his employment." Francis et al. v. Foster, 113 Tex. 521, 260 S. W. 1023.

■ "A commission ordinarily becomes payable on completion of the transaction which the broker was employed to negotiate, unless there is a stipulation in the contract of employment to the contrary. If by the contract of employment the broker is merely to find a customer who is able, ready and willing to enter into a transaction with the principal on the terms prescribed by him, the broker is entitled to compensation on performing that service, whether or not the principal completes the transaction. Thus a broker employed to find a purchaser or a vendor or to exchange lands ordinarily becomes entitled to a commission on the execution of a contract of purchase or sale or exchange, although without any fault on the part of the broker the contract is never carried out, unless there is a stipulation, express or implied, making his right to compensation depend on the performance of the contract or the happening of some other event." 9 C. J. 591, § 86.

This announcement of the law is quoted with approval by the Commission of Appeals in Stevens v. Karr, 33 S.W.(2d) 725.

■ The provision in the contract for liquidated damages was to assist either party in enforcing specific performance by the other, and did not give either party the right to forfeit the contract by the payment of the amount therein provided. Jones v. Parker (Tex. Civ. App.) 26 S.W.(2d) 742, and authorities therein cited.

For additional authorities see Kitchen v. Lloyd (Tex. Civ. App.) 14 S.W.(2d) 335; Stolaroff v. Campbell (Tex. Civ. App.) 18 S.W.(2d) 838; Spring v. R. N. Burt Land Co. (Tex. Civ. App.) 25 S.W.(2d) 670.

Neither the appellee nor Mr. Evans saw fit to enforce his rights to specific performance, but, before the abstracts of title had been furnished and examined, and before any defects in title had been pointed out, the parties mutually agreed, first, to abrogate the liquidated damage clause of the contract and later to cancel and abandon the entire contract for the exchange of properties.

We do not feel that under the facts revealed by this record and the findings of the trial court we are authorized to reverse and

render. The judgment is therefore reversed, and the cause remanded.