**Affirmed and Opinion Filed April 25, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01464-CV

**SHERI DURHAM AND DENISE JENKINS, AS ADMINISTRATOR OF THE ESTATE OF JESSICA HALEY DURHAM, Appellants**

**V.**

**CHILDREN'S MEDICAL CENTER OF DALLAS, AMY HOLLAND, CPNP, DAVID W. KINES, FNP, LAWSON COPLEY, M.D., J. PATRICK HIEBER, M.D., AND TIMOTHY J. RUPP, M.D., Appellees**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-01231-D**

## OPINION

Before Justices Myers, Evans, and Whitehill
Opinion by Justice Whitehill

This case presents an issue of first impression: If a 12-year-old person receives medical treatment and dies more than two years after that treatment ends, does the Texas Constitution's Open Courts Clause prevent the running of limitations against otherwise untimely filed survival and wrongful-death claims against her health-care providers? We conclude that the answer is no because the Open Courts Clause does not apply to these statutorily created claims.

We also conclude that appellants failed to raise a genuine fact issue regarding fraudulent concealment.

Accordingly, we affirm the trial court's take-nothing summary judgment.

# I. BACKGROUND

**A.     Facts.**

We draw these facts from appellants' live pleading and from the summary judgment evidence:

The decedent, Jessica Haley Durham, was born on November 16, 1993.

In July 2006, Jessica was seriously injured in a car accident in Hawaii. Her injuries included a broken leg and a ruptured spleen. The Hawaii doctors also diagnosed her to have dilatation of the ascending aorta that did not appear to be trauma related and for which they recommended follow-up with a pediatric cardiologist in Texas.

Jessica was transferred to appellee Children's Medical Center of Dallas, where she arrived on August 16, 2006. Her general pediatrician, appellee J. Patrick Hieber, M.D., helped arrange the transfer. But Hieber did not see Jessica after her transfer to Children's, nor did he see her again before she died in 2008.

Appellee Timothy Rupp, M.D. and nurse practitioner Lori Thornton treated Jessica when she arrived at Children's. That was the only day on which Rupp had any interaction with Jessica. Jessica was discharged from Children's that same day with instructions to return to the Children's orthopedic clinic on August 21 for follow-up orthopedic surgery.

Appellee Lawson Copley, M.D. evaluated Jessica on August 21, 2006. Jessica was admitted to Children's on August 22, and Copley operated on her left leg that same day. She remained at Children's until August 31, when she was transferred to Texas Scottish Rite Hospital. Copley was Jessica's attending physician during her stay at Children's.

Appellees Amy Holland, CPNP, and David W. Kines, FNP, also provided health care services to Jessica during her stay at Children's.

Jessica never returned to Children's after she went to Scottish Rite, and appellants concede that August 31, 2006, was the "date of Jessica's last treatment by the Appellees."[1]

On December 25, 2008, Jessica suddenly became ill and died because her aorta ruptured. Jessica was 15 years old when she died.

## B.    Procedural history.

Appellant Sheri Durham is Jessica's mother.    Appellant Denise Jenkins is the administrator of Jessica's estate.

On December 6, 2010, more than four years after appellees last treated Jessica and almost two years after she died, appellants sent letters to appellees pursuant to civil practice and remedies code Chapter 74 giving them notice of appellants' health-care-liability claims.

On February 17, 2011, 73 days after sending their notice letters, appellants sued appellees asserting survival and wrongful-death claims related to Jessica's death.  The gist of their suit was that appellees failed to act on the information they had about Jessica's enlarged aorta and failed to treat or obtain treatment for that condition.

After appellees unsuccessfully challenged appellants' expert reports, *Children's Med. Ctr. of Dallas v. Durham*, 402 S.W.3d 391 (Tex. App.—Dallas 2013, no pet.), appellees filed summary judgment motions based on limitations.  The motions also raised alternative partial summary judgment grounds attacking Durham's claim for punitive damages.  Appellants filed a single combined summary judgment response.  Appellees filed reply briefs, some of which included objections to appellants' summary judgment evidence.

The trial judge sustained some objections to appellants' evidence and overruled others. The trial judge also granted all the summary judgment motions, resulting in a take-nothing

---

[1] Some appellees contend that their particular "date of last treatment" of Jessica was before August 31, but they all concede that appellants alleged that they negligently treated Jessica sometime in August 2006.

judgment. Appellants filed a new-trial motion, which the trial judge denied. Appellants timely appealed.

## II. STANDARD OF REVIEW AND BURDENS OF PROOF

We review a summary judgment de novo. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.).

When we review a traditional summary judgment for a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Id*. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Id*. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *In re Estate of Hendler*, 316 S.W.3d 703, 707 (Tex. App.—Dallas 2010, no pet.).

"A summary judgment movant on limitations bears the burden to '(1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury.'" *Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 385 (Tex. App.—Dallas 2007, pet. dism'd) (quoting *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999)). The discovery rule is not at issue in this case. If the movant carries its burden, the nonmovant must produce evidence raising a genuine fact issue in avoidance of limitations. *Id*.

## III. ISSUES

Appellants raise six issues:

1.      Was limitations tolled as to Jenkins's survival action because Jessica was a minor who was still alive more than two years after the date of her last medical treatment?

2.      Was limitations tolled as to Durham's wrongful-death claims because Jessica was a minor who was still alive more than two years after the date of her last medical treatment?

3.      Did appellants raise a genuine fact issue regarding whether appellees engaged in fraudulent concealment, which would toll limitations?

4.      Did the trial court err by granting summary judgment as to appellants' claims for punitive damages?

5.      Did the trial court err by deeming the expert report of Dr. Ron Blair irrelevant to fraudulent concealment?

6.      Did the trial court err by sustaining appellees' objections to the expert reports of Dr. Ron Blair, Dr. Sandra Clapp, and Dr. Charles Kleinman?

For the reasons discussed below, we conclude that appellants' claims are time-barred as a matter of law.  We also conclude that appellants did not raise a genuine fact issue on fraudulent concealment.

## IV. ANALYSIS

### A.      The Law of Limitations.

#### 1.      The Statute.

The parties agree that civil practice and remedies code § 74.251 supplies the applicable statute of limitations.  Section 74.251(a) provides:

> Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, *or have filed on their behalf*, the claim. *Except as herein provided this section applies to all persons regardless of minority or other legal disability*.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (emphases added).

Section 74.251(b) is a ten-year statute of repose, *id.* § 74.251(b), which does not apply in this case.

Moreover, § 74.251(a) is virtually identical to its predecessor, Texas Revised Civil Statutes article 4590i, § 10.01.[2] *See Adams v. Gottwald*, 179 S.W.3d 101, 103 (Tex. App.—San Antonio 2005, pet. denied) (quoting both statutes). Several cases relevant to our analysis were decided under § 10.01. *See, e.g.*, *Brown v. Shwarts*, 968 S.W.2d 331, 333 (Tex. 1998) (quoting § 10.01). We thus occasionally refer to § 10.01 in our discussion.

Also, according to § 74.051(c)'s plain terms, the § 74.251(a) limitations period is tolled for 75 days if the claimant gives notice of his or her claim as Chapter 74 requires. CIV. PRAC. & REM. § 74.051(c).

### 2. Section 74.251(a) applies to statutorily created wrongful-death and survival claims.

At common law, a person did not have his or her own cause of action for the death of another person. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) (orig. proceeding). The legislature, however, created such a cause of action by enacting the Wrongful Death Act. *Id.*; *see also* CIV. PRAC. & REM. §§ 71.001–.012.

Civil practice and remedies code § 16.003(b) provides the general limitations period for wrongful-death claims. But § 74.251(a) overrides § 16.003(b) if the wrongful-death claim is also a health-care-liability claim. *See Bala v. Maxwell*, 909 S.W.2d 889, 892–93 (Tex. 1995) (per curiam) (interpreting § 10.01). Furthermore, § 74.251(a)'s tolling provision for minors under age 12 does not apply to an adult's wrongful-death claim based on the death of a minor under 12. *See Baptist Mem'l Hosp. Sys. v. Arredondo*, 922 S.W.2d 120, 121 (Tex. 1996) (per curiam) (interpreting § 10.01).

---

[2] Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, 2052 (amended 1993 and 1995), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

Similarly, at common law a person's own personal-injury claims did not survive his or her death. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). The legislature, however, replaced this rule by enacting the survival statute, which provides that "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." CIV. PRAC. & REM. § 71.021(b). A personal-injury claim brought on a deceased person's behalf is commonly called a "survival action" or a "survival claim." *See, e.g.*, *Austin Nursing Ctr.*, 171 S.W.3d at 848 (using both terms).

Unlike wrongful-death claims, there is no separate statute of limitations for survival claims. *Brown*, 968 S.W.2d at 333. If a survival claim is also a health-care-liability claim, however, it is governed by § 74.251. *See Gross v. Kahanek*, 3 S.W.3d 518, 521 (Tex. 1999) (per curiam) (applying article 4590i's limitations provisions to survival action).

### 3. The Open Courts Clause and Personal-Injury Claims.

The supreme court in *Weiner v. Wasson*, 900 S.W.2d 316 (Tex. 1995), established that the Texas Constitution's Open Courts Clause, TEX. CONST. art. I, § 13, limits the statute of limitations' effect on a minor's common-law personal-injury claim. In that case, Dr. Weiner operated on Wasson when Wasson was 15 years old. *Weiner*, 900 S.W.2d at 317. Just over four years later, Wasson sued Dr. Weiner for negligence. *Id*. The trial court granted summary judgment for Dr. Weiner based on limitations. But the court of appeals reversed, and the supreme court agreed with the court of appeals. *Id*. Specifically, the supreme court held that § 10.01 was "unconstitutional as applied to minors because it purports to cut off Wasson's cause of action before he reaches majority, an age at which he may lawfully sue on his own behalf." *Id*. at 318. The court then considered what statute of limitations applied to Wasson's claim and held that civil practice and remedies code Chapter 16's general limitations and tolling provisions

applied, thereby giving Wasson two years after reaching age 18 to sue. *Id.* at 321. *Weiner*'s holdings apply to § 74.251. *Adams*, 179 S.W.3d at 103.

But the Open Courts Clause does not apply to statutory claims, and both survival and wrongful-death claims are statutory claims. *Bala*, 909 S.W.2d at 893. More specifically, "wrongful-death and survival claimants cannot establish an open-courts violation because they 'have no common law right to bring either.'" *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 903 (Tex. 2000) (quoting *Bala*, 909 S.W.2d at 893).

### 4. Limitations in Health-Care-Liability Claims Arising from a Minor's Death.

The supreme court has twice addressed limitations in health-care-liability claims arising from a minor's death (but both cases involved minors who were under 12 when they died).

In *Brown v. Shwarts*, Christina Brown was in her pregnancy's third trimester when Dr. Shwarts treated her for health problems. 968 S.W.2d at 333. Four days later, Brown went to a different doctor and prematurely gave birth to a son, Dillon, who died the next day. *Id.* Brown and her husband timely gave Dr. Shwarts notice of their claims, which tolled limitations for 75 days, and then filed a wrongful-death and survival lawsuit against Dr. Shwarts two years and 76 days after Dr. Shwarts treated Brown. *Id.* at 333, 334. The supreme court held that the Browns' wrongful-death claims were time-barred. Specifically, under § 10.01, the two-year limitations period began to run when the allegedly negligent treatment occurred, and "[l]imitations on a wrongful death action based on negligent health care is not tolled or extended because the decedent was a minor." *Id.* at 334 (citing *Baptist Mem'l Hosp. Sys.*, 922 S.W.2d at 121). Thus, although the Browns' timely notice to Dr. Shwarts tolled limitations for 75 days, they still filed their wrongful-death claims one day too late. *Id.*

The Browns' survival action, however, was timely because it was "the same action Dillon had the day he died" and § 10.01 tolled limitations to age 14 for injury claims by patients under

12 years old when the treatment occurred.  *Id*.  Although Dillon's death stopped the tolling on his personal-injury claims and started limitations running against the Browns' survival claims, Dillon's prior tolling period meant that the Browns' survival claims were timely.  *Id*. at 334–35.

The supreme court also decided similar issues in *Gross v. Kahanek*, 3 S.W.3d 518 (Tex. 1999) (per curiam).  The Kahaneks' daughter Kyndil suffered from seizures, and Dr. Gross treated her with a drug regimen until September 1992.  *Id*. at 519.  Another doctor continued the drug regimen thereafter.  *Id*.  Kyndil died on June 13, 1993, at the age of either six or seven, allegedly from drug poisoning.  *Id*. at 519–20.  The Kahaneks asserted wrongful-death and survival claims against Dr. Gross on June 13, 1995.  *Id*. at 520.

The supreme court held that the wrongful-death claims were time-barred under § 10.01 because (i) the evidence conclusively established that Dr. Gross last treated Kyndil in September 1992 and (ii) wrongful-death claims are not tolled because the decedent is a minor.  *Id*. at 521. But the survival claim was not time-barred because limitations on Kyndil's personal-injury claim was tolled until her death and the survival claim was filed within two years and 75 days after she died.  *Id*.

**B.**     **First Issue: Was the statute of limitations tolled as to appellant Jenkins's survival claims because Jessica was a minor?**

**1.**     **Section 74.251(a) tolling does not apply.**

Our task in construing § 74.251(a) is to ascertain and effect the legislature's intent.  *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).  We initially limit our review to the text's plain meaning as the sole expression of legislative intent, unless the legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results.  *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015).   We read the statute as a whole and interpret it so as to give effect to every part.  *City of San Antonio*, 111 S.W.3d at 25.

Under § 74.251(a), limitations began to run on any personal-injury claim arising from appellees' conduct no later than August 31, 2006, which is the last day that any appellee treated Jessica. *See* CIV. PRAC. & REM. § 75.251(a). Because Jessica was 12 years old when appellees treated her, § 74.251(a)'s tolling provision for minors under 12 does not apply. *See id.* Accordingly, under § 74.251(a)'s plain language and this case's undisputed facts, Jenkins's survival action is time-barred unless a different tolling doctrine applies.

## 2. Minority age tolling does not apply.

Appellants argue that limitations was tolled because Jessica was a minor. They rely on four cases for support: *Weiner*, *Adams*, *Brown*, and *Gross*. These cases, however, do not support appellants' argument.

Specifcally, *Weiner* and *Adams* stand for the general point that, because of the Open Courts Clause, § 74.251(a) does not apply to a minor's *common-law personal-injury claims* arising from health care. *Weiner*, 900 S.W.2d at 318; *Adams*, 179 S.W.3d at 103. Jessica was a minor, so had she survived her final illness, limitations would have been tolled for her personal-injury claims until she turned 18. From that result, Jenkins extrapolates that it would also be unconstitutional to apply § 74.251(a) to her statutory survival action. We disagree.

Although *Weiner* says that § 10.01 (now § 74.251) "is unconstitutional as applied to minors," 900 S.W.2d at 321, Jessica was, upon her death, no longer a minor. *See Brown*, 968 S.W.2d at 334 ("Once Dillon died, he ceased to be a minor under twelve years old . . . ."). *Weiner* and *Adams*, which involved common-law personal-injury claims, do not address survival claims that exist only by statute and therefore receive no protection from the Open Courts Clause. *See Bala*, 909 S.W.2d at 893. Thus, *Weiner* and *Adams*, which is to the same effect as *Weiner*, are not on point.

–10–

Next we consider *Brown* and *Gross*. *Brown* and *Gross* each applied tolling to survival claims filed after a patient under age 12 died, but the opinions do not specify whether the tolling arose from (i) § 10.01's tolling provision itself or (ii) applying the Open Courts Clause. Jenkins argues that *Brown* and *Gross* relied on the Open Courts Clause and, because the Open Courts Clause applies to all minors, limitations was tolled for Jenkins's survival claims until Jessica's death.[3] We reject Jenkins's argument.

First, *Brown* quotes the statutory tolling provision in support of its holding that limitations was tolled during the infant patient's life:

> [L]imitations on Dillon's action began to run the day Shwarts treated him. Section 10.01 provides, however, that "minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the[ir] claim." The effect ***of this provision*** was to toll all running of limitations on Dillon's claim until his death. *Weiner v. Wasson*, 900 S.W.2d 316 (Tex. 1995).

968 S.W.2d at 334 (emphasis added). Thus, Dillon's parents had two years and 75 days from the day Dillon died to file their survival claims, which they timely did. *Id.* at 335. But Jessica was over 12 when appellees treated her, so the statute did not toll limitations on her claims. Accordingly, Jenkins cannot invoke statutory tolling for her statutory survival claims.

Second, *Gross* simply reiterates *Brown*. Again, the case involved a survival claim filed after a minor under 12 died. 3 S.W.3d at 519–20. And again, the court held that limitations was tolled until the minor's death, which made the survival claim timely. *Id.* at 521. Although the *Gross* court did not cite the statutory tolling provision, it did cite *Brown* to support its tolling analysis, and *Brown* cites the statutory tolling provision for its holding.

Jenkins, however, argues that (i) both *Brown* and *Gross* also cite *Weiner* in support of the tolling analysis, and (ii) thus the Open Courts Clause was the basis for the *Brown* and *Gross*

---

[3] Appellants' reply brief asserts that they are not relying on the Open Courts Clause. But they rely on *Weiner*, which is an Open Courts Clause case, and on arguments that *Brown* and *Gross* are also Open Courts Clause cases.

holdings because *Weiner* was decided based only on the Open Courts Clause. We are not persuaded.

To begin, although *Weiner* differs from *Brown* and *Gross* in that Weiner was asserting his own common-law personal-injury claim, it does serve to illustrate how minority tolling provision works in the abstract. *Weiner* thus helps explain how minority tolling applies to the statutory claims in *Brown* and *Gross*.

Additionally, as shown above, *Brown* relied specifically on § 10.01's statutory tolling and did not mention the Open Courts Clause. Also, *Gross* cited *Brown* and was factually similar to *Brown* in that both cases involved patients under 12. Because § 10.01's statutory tolling was available in *Gross* just as it was in *Brown*, the better reading of *Gross* is that the court relied on statutory tolling.

Moreover, reading *Brown* and *Gross* as statutory tolling cases keeps them consistent with the supreme court's other holdings that (i) survival claims are statutory in nature and (ii) the Open Courts Clause therefore does not apply to survival claims. *See Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 903; *Bala*, 909 S.W.2d at 893.

In sum, Open Courts Clause analysis applies to common-law claims, and statutory tolling analysis applies to statutory claims. Because Jenkins's survival claims are statutory claims, the Open Courts Clause does not apply. Since Jessica was over 12 when appellees treated her, there is no statutory tolling for Jenkins's survival claims. *See* CIV. PRAC. & REM. § 74.251(a).

For the above reasons, we reject appellants' first issue.

**C.      Second Issue: Was limitations tolled as to appellant Durham's wrongful-death claims because Jessica was a minor and she died more than two years after appellees last treated her?**

As noted above, § 74.251(a) overrides the general wrongful-death statute of limitations for health care liability claims. *See Bala*, 909 S.W.2d at 892–93. And under Chapter 74's plain

terms, Durham's wrongful-death claims are time-barred because she sued more than two years and 75 days after appellees last treated Jessica. *See* CIV. PRAC. & REM. § 74.251(a). Because the Open Courts Clause does not apply to wrongful-death claims, it also does not affect § 74.251(a)'s operation in wrongful-death cases. *See id.* ("Except as herein provided this section applies to all persons regardless of minority or other legal disability."); *Bala*, 909 S.W.2d at 893; *Baptist Mem'l Hosp. Sys.*, 922 S.W.2d at 121–22.

> *Brown* reinforces this result. The *Brown* court said:

> Limitations on a wrongful death action based on negligent health care is not tolled or extended because the decedent was a minor. . . . This means that an action for the wrongful death of a child who lives more than two years after a prenatal injury will as a rule be barred by limitations, but the same result ensues when the decedent is an adult. . . . While there are circumstances when this result will seem harsh, it is well within the Legislature's prerogative to prescribe the limitations period for a wrongful death claim which, it must be remembered, did not exist at common law and is a creature of statute.

968 S.W.2d at 334 (citations omitted). The court adhered to this reasoning regarding a post-natal injury in *Gross*, 3 S.W.3d at 521. *Brown*'s reasoning thus applies fully here.

Part of Durham's argument is that it would be illogical to allow tolling for survival claims but not for wrongful-death claims. But, because we have concluded that there was no tolling for Jenkins's survival claims, there is no inconsistency in our applying the *Brown* analysis and rejecting tolling for Durham's wrongful-death claims. Moreover, to the extent that there is an inconsistency in these statutory regimes, that is for the legislature to address, not us.

Durham also argues that we should recognize equitable tolling because § 74.251(a) operates unfairly when a minor dies more than two years after the date of last treatment, effectively barring a beneficiary's wrongful-death claim before it accrues. But the supreme court has accepted that result when the deceased person is an adult. *Diaz v. Westphal*, 941 S.W.2d 96, 97–101 (Tex. 1997). Accordingly, we decline to adopt the new equitable tolling doctrine Durham proposes.

–13–

Durham further argues that *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343 (Tex. 1992), supports her position. *Russell*, however, was decided under the general wrongful-death statute of limitations. *See id.* at 344. Russell, the original plaintiff in that case, sued in 1982 related to chronic obstructive pulmonary disease. *Id.* His case was still pending when he died in 1988, and his survivors then sued seven new defendants for wrongful death. *Id.* The supreme court held that the new wrongful-death claims derived from Russell's rights, and that those claims were barred because Russell's personal-injury claims against the new defendants would have been time-barred had he brought them in 1988. *Id.* at 345–52.

Durham reasons that because Jessica's personal-injury claims would not have been time-barred had she lived to assert them, *Russell* means Durham's derivative wrongful-death claims are likewise timely. We are not persuaded because *Russell* did not involve § 74.251(a), which bars Durham's wrongful-death claims regardless of any rights Jessica would have had she survived. Thus, *Russell* is distinguishable.

At oral argument, Durham argued that the ten-year statute of repose in § 74.251(b) suggests that the statute of limitations in § 74.251(a) must be subject to tolling. *See Walters v. Cleveland Reg'l Med. Ctr.*, 307 S.W.3d 292, 298 (Tex. 2010) ("Put simply, a ten-year repose period has no purpose unless the two-year limitations period has exceptions . . . ."). We are not persuaded by Durham's argument because § 75.251(a) is already subject to several tolling rules and we find no basis for judicially creating a new tolling rule for that statute.

For example, by its own terms, § 74.251(a) provides tolling for patients under 12 (but also specifically excludes tolling for minors 12 or older). And the Open Courts Clause effectively tolls the statute for minors' common-law personal-injury claims. *Weiner*, 900 S.W.2d at 318–21; *see also Walters* 307 S.W.3d at 293–94 (reiterating that there is Open Courts tolling in "surgical sponge cases"). And, as we discuss below, fraudulent-concealment tolling can be

available in health-care-liability cases. But it does not follow from these discrete tolling doctrines that we should create a new tolling doctrine for wrongful-death claims involving the death of a minor occurring more than two years after the last medical treatment. Such a development in the law is not for us, an intermediate appellate court, to address. *Cf. Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 892 (Tex. App.—Dallas 2011, pet. denied) (judicial exceptions to employment-at-will doctrine must be created by the supreme court).

We thus reject appellants' second issue.

**D.    Third Issue: Did appellants raise a genuine issue of material fact regarding whether fraudulent concealment tolled limitations?**

**1.    Applicable Law.**

The supreme court recognized fraudulent concealment as a viable ground for tolling limitations under § 10.01. *See, e.g.*, *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001); *Borderlon v. Peck*, 661 S.W.2d 907 (Tex. 1983). Similarly, the courts of appeals have continued to apply fraudulent concealment under § 74.251(a). *See, e.g.*, *Limon v. Yahagi*, No. 13-12-00019-CV, 2012 WL 3133804, at *3–6 (Tex. App.—Corpus Christi Aug. 2, 2012, no pet.) (mem. op.).

On summary judgment, the party seeking to avoid limitations based on fraudulent concealment bears the burden of raising a genuine fact issue on each of its elements. *Bertrand v. Bertrand*, 449 S.W.3d 856, 868 (Tex. App.—Dallas 2014, no pet.); *see also Shah*, 67 S.W.3d at 841.

The elements of fraudulent concealment are (1) the defendant actually knew that a wrong occurred, (2) the defendant had a fixed purpose to conceal the wrong, and (3) the defendant concealed the wrong from the plaintiff. *Shah*, 67 S.W.3d at 841. Thus, fraudulent concealment requires more than evidence that the physician was negligent; it also requires evidence "that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999) (footnote omitted). Finally,

–15–

fraudulent-concealment tolling ends when the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence. *Shah*, 67 S.W.3d at 841.

### 2. Application of the Law to the Facts.

For the reasons discussed below, we conclude that appellants failed to raise a genuine fact issue regarding whether appellees actually knew that a wrong occurred or that they had a fixed purpose to conceal the wrong.[4]

The alleged wrongs in this case are appellees' alleged failures to assess, diagnose, and treat Jessica's enlarged aorta and their alleged failures to tell Durham that they had not done so. For purposes of fraudulent concealment, however, it is not enough that appellees may have known that they did or did not do these things; appellants had to produce evidence that appellees knew their conduct was negligent. *See Shah*, 67 S.W.3d at 846 (plaintiff's affidavit failed to show "that Dr. Shah knew, after the November 1992 surgery, that he was negligent"); *Earle*, 998 S.W.2d at 888 (plaintiff must show that defendant "actually knew the plaintiff was in fact wronged"). And appellants had to produce evidence that appellees had a fixed purpose to conceal their negligence. *See Shah*, 67 S.W.3d at 841.

Appellants' evidence does not create a reasonable inference that appellees actually knew that a wrong occurred or that they had a fixed purpose to conceal it. Instead, their evidence shows only what appellees did and did not do when they treated Jessica in August 2006. We summarize this evidence as follows:

### Dr. Hieber

Dr. Hieber, Jessica's pediatrician, who did not see her after she returned from Hawaii, testified by deposition that he saw the Hawaii doctors' notes that Jessica needed to consult with a

---

[4] As noted above, the trial court sustained some objections to appellants' evidence. Appellants' fifth and sixth issues address those rulings. For purposes of analyzing appellant's third issue, we assume, without deciding, that the trial court erred in sustaining those objections, and we have considered all the evidence that appellants have cited in their appellate brief to support their fraudulent-concealment issue.

pediatric cardiologist, and that he did not do anything to determine whether she received a pediatric follow-up.

**Dr. Rupp and Nurse Thornton**

Dr. Rupp and Nurse Thornton saw Jessica in the Children's emergency room when she arrived from Hawaii. Rupp did not say anything in his August 16, 2006 discharge notes about Jessica's enlarged aorta.

Thornton testified by deposition that she was aware of Jessica's aortic condition when she saw Jessica in the Children's emergency room. She also said that Durham told her that Durham was very distraught over her financial condition and said that she wanted the "excessive costs" to stop before Jessica was transferred to Scottish Rite Hospital.

Appellants assert that Durham denied that this conversation ever occurred, but her affidavit does not contain such a denial. Durham, however, did say in her affidavit that Thornton and Rupp told her that all of Jessica's medical needs at the time were met and that Jessica needed only additional orthopedic care.

Thornton acknowledged that the pediatric cardiology consult was an unresolved issue when Jessica left the hospital.

**Nurse Holland**

Medical records showed that on August 22, 2006, Nurse Holland ordered a cardiology consult. On that same day a "hold" on that consult was ordered, and a "2 view chest x-ray to evaluate aorta" was ordered instead. Dr. Tejas Shah testified that the x-ray was not the appropriate test for the enlarged aorta.

Durham testified by affidavit that, after Jessica's August 22, 2006 surgery, she told Holland that there was some concern about Jessica's enlarged aorta while she was in Hawaii. She further said:

Amy Holland told and assured me that she would arrange for a cardiologist to evaluate Jessica's aorta, and that unless I heard otherwise from a cardiologist or another member of Jessica's healthcare team at [Children's], I should assume that the enlarged aorta had been so evaluated and that evaluation yielded no further concern requiring additional medical intervention.

Durham also said that (i) Holland later told Durham that a cardiology consultation for further evaluation of Jessica's aortic condition had been ordered, and (ii) no one at Children's ever told her that the consultation had been held or canceled.

### Expert witness Dr. Blair

Appellants' expert witness Ron Blair, M.D., furnished an affidavit in which he incorporated his attached supplemental expert report by reference. His report opined that each appellee (and Nurse Thornton) breached the applicable standard of care.

We assume without deciding that appellants' evidence raises a fact issue as to whether appellees were negligent in treating Jessica and in informing Durham about what appellees had and had not done. But appellants produced no evidence that appellees *knew* they were negligent. The evidence suggests that at least some of the various health-care providers involved in Jessica's care knew, at various times, that Jessica had not been evaluated by a pediatric cardiologist and that Durham had not been told of that fact. The evidence, however, does not support an inference that any appellee actually knew that he, she, or it had been negligent when that appellee failed to follow up on the pediatric-cardiology consultation or when that appellee failed to advise Durham that the consultation had not occurred.

Nor does the evidence support an inference that any appellee had a fixed purpose to conceal a wrong from appellants.

Without some evidence of these elements, appellants did not raise a genuine fact issue regarding fraudulent concealment. *See Shah*, 67 S.W.3d at 846 (plaintiff failed to raise a fact issue that "Dr. Shah knew about the alleged negligence" or intended to conceal it).

–18–

We thus reject appellants' third issue.

## V. CONCLUSION

We have rejected appellants' first, second, and third issues. It is unnecessary for us to consider their fourth, fifth, and sixth issues.

For all of the above reasons, we affirm the trial court's judgment.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE

141464F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SHERI DURHAM AND DENISE
JENKINS, AS ADMINISTRATOR OF THE
ESTATE OF JESSICA HALEY DURHAM,
Appellants

No. 05-14-01464-CV     V.

CHILDREN'S MEDICAL CENTER OF
DALLAS, AMY HOLLAND, CPNP,
DAVID W. KINES, FNP, LAWSON
COPLEY, M.D., J. PATRICK HIEBER,
M.D. AND TIMOTHY J. RUPP, M.D.,
Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-11-01231-D.
Opinion delivered by Justice Whitehill.
Justices Myers and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Children's Medical Center of Dallas, Amy Holland, CPNP, David W. Kines, FNP, Lawson Copley, M.D., J. Patrick Hieber, M.D. and Timothy J. Rupp, M.D. recover their costs of this appeal from appellants Sheri Durham and Denise Jenkins, as Administrator of the Estate of Jessica Haley Durham.

Judgment entered April 25, 2016.